United States Court of Appeals,

Eleventh Circuit.

Nos. 94-4195, 95-5331.

UNITED STATES of America, Plaintiff-Appellee,

v.

Antonio MENDEZ, a.k.a. Jorge Espinosa, a.k.a. Jorge Hernandez, a.k.a. Antonio Sanchez, a.k.a. Jose Orlando Garcia, a.k.a. Ricardo Raul Ramirez, a.k.a. Jorge Antonio Esposito, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Antonio MENDEZ, Defendant-Appellant.

July 21, 1997.

Appeals from the United States District Court for the Southern District of Florida. (No. 93-239-Cr-DLG), Donald L. Graham, Judge.

Before HATCHETT, Chief Judge, DUBINA, Circuit Judge, and COHILL[*], Senior District Judge.

HATCHETT, Chief Judge:

The appellant, Antonio Mendez, challenges his convictions on evidentiary and double jeopardy grounds. We affirm in part, vacate in part and remand to the district court for resentencing.

I. BACKGROUND

On May 4, 1993, Mendez, Raul Peraza and Juan Tolsa met and planned to steal a mail truck the following day. On May 5, the three men went out in Peraza's blue Cadillac in the West Kendall area of Miami to execute their scheme. Although the men surveilled mail carrier Veronica Bentley, they decided against robbing her because "the vicinity was open, too open, and [they] would be seen very easily." Bentley, however, had grown suspicious after the Cadillac passed her several times and when two men whom she did not recognize from the neighborhood walked past her and subsequently entered the Cadillac. Bentley wrote down the Cadillac's license plate number.

Later that afternoon, Mendez, Peraza and Tolsa spotted mail carrier Milton Harrison on his

_____

[*]Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

route. Peraza dropped off Mendez and Tolsa, and both men approached Harrison. Tolsa told Harrison, "Give me the keys to your truck." Tolsa also stated, while Mendez displayed a handgun tucked into his trousers, "Don't make this a homicide." Harrison turned over the keys; Tolsa drove the mail truck back to Peraza's car, and the men loaded the mail into the trunk. The three men then traveled to a motel, rented a room and searched through the mail for credit cards. When the three men finished going through the mail, they bundled it up, drove to a back road and burned it.

Later that same day, Mendez, Peraza and Tolsa went to a Service Merchandise store on 148th Avenue and Kendall Drive in Miami, where Tolsa used one of the stolen credit cards to purchase a television. The next day, May 6, Tolsa, again accompanied by Mendez and Peraza, used another stolen credit card to purchase more wares from a Service Merchandise store on Coral Way and 127th Avenue in Miami. An employee of the Coral Way store alerted the manager, Ronald Fillion, to the suspicious purchases. Fillion followed the two men who made the purchases as they left the store, and he noted the license plate number of their blue Cadillac. The store's security surveillance cameras recorded the transaction, and Fillion forwarded the videotape to law enforcement officials.

On May 17, 1993, Mendez, Peraza and Tolsa again met to steal a mail truck. They departed to the Perrine area of Miami in Peraza's car; an acquaintance, Frank Martinez, followed in a tan car. Mail carrier George Braden noticed both a tan car and a blue or black Cadillac traveling the streets of his route. The presence of the cars gave Braden the feeling that he "was being set up." As before, Peraza dropped off Mendez and Tolsa to carry out the crime. Mendez displayed the gun to Braden and told him not to "make this a homicide"; Tolsa requested the keys to the truck. Braden gave the keys to Tolsa, who drove the truck (in which Braden had left his wallet) to where Peraza waited. After waiting for Martinez to arrive, the men unloaded the mail into one of the cars. They then drove to Martinez's house, where they searched through the mail looking for credit cards. Afterwards, the men discarded the mail in a dumpster. Mendez and Tolsa then accompanied Peraza in his car. Peraza subsequently dropped off Tolsa, and then returned to his apartment complex, where law enforcement officials arrested him and Mendez.

On July 7, 1993, a grand jury in the Southern District of Florida returned a superseding

indictment charging Mendez, Peraza and Tolsa with assaulting a mail carrier with the intent to steal mail, in violation of 18 U.S.C. §§ 2114 and 2, on May 5, 1993 (Count I), and May 17, 1993 (Count II), and with possession of stolen mail, in violation of 18 U.S.C. §§ 1708 and 2, on May 5, 1993 (Count III), and May 17, 1993 (Count IV). Thereafter, Peraza and Tolsa pleaded guilty to some of the counts against them; Mendez went to trial in April 1994.

The government produced an abundance of evidence against Mendez. Both Peraza and Tolsa testified against him, describing in detail the perpetration of the crimes. A fingerprint expert identified Mendez's prints on credit card sleeves and an envelope found in Peraza's apartment; these materials should have been delivered to residences on the mail routes of carriers Harrison and Braden. In addition, law enforcement officers discovered a television, stereo and camera in Peraza's apartment purchased from Service Merchandise stores with credit cards that belonged to residents of Harrison's and Braden's mail routes. Inspectors also found one of Braden's credit cards in Peraza's Cadillac. Bentley, presented with a photograph spread approximately two weeks after May 5, stated that the photograph of Mendez "looked most like" one of the two men who walked past her on that date. Harrison stated that Mendez's picture in a photograph spread most closely resembled one of his assailants.[1] Moreover, Fillion identified Mendez as one of the men appearing on the videotape recorded at his store on May 6. Finally, the license plate number Bentley and Fillion each memorialized belonged to a Cadillac registered to Elizabeth Paz, Peraza's wife.

During the government's direct examination of Peraza, the following exchange occurred concerning the codefendants' May 4 meeting:

Q. What types of things did you talk about at the meeting?

A. Tolsa came over. We sit down in the restaurant and talked about who was supposed to go to a jewelry shop, and Tolsa was supposed to go inside the jewelry shop and tell the jewelry man to see some diamonds and some jewelry, and that is when Antonio Mendez would come in and open the door like if he was a customer. That's when ... he would come out with the diamonds.

Q. What was your role?

---

[1]Neither Bentley nor Harrison was able to make a positive identification of Mendez, however.

A. Waiting for them a block away.

Q. Did you ever attempt to rob that jewelry store?

A. At gunpoint you mean?

Q. Did you carry through on that plan?

A. To wait in the corner?

Q. To rob the jewelry store?

A. Yes.

Q. When did you do that?

A. May 4th.

Q. On May 4th you ... went to the jewelry shop?

A. On May 5th I went to the jewelry shop.

Q. What time on May 5th?

A. 10 o'clock.

Q. A.M. or p.m.?

A. A.M.

Q. Who was with you when you went to the jewelry store?

A. Antonio Mendez and [Juan] Miguel Tolsa.

Q. Did you actually rob the jewelry store?

A. No, I did not.

Q. What happened?

A. Well, they told me to go in the jewelry shop to see how it is, so I went in and there was nothing.  There was nothing that they—like Juan Tolsa said there would be diamonds, expensive jewelry.  It was not.

Q. What did you do upon leaving the jewelry store?

A. We left.

Q. When you say "we" who are you referring to?

A. Juan Miguel Tolsa and Tony Mendez.

....

Q. You got in the car and you left the jewelry store. Where did you go next?

A. They said Antonio Mendez and Tolsa wanted to make some money. Then I came up with the idea of credit cards.

Q. What kind of idea was that?

A. To steal a mail truck.

Later in the same examination, the prosecutor asked Peraza when, after May 7, 1993, he next met with Mendez and Tolsa. The following colloquy transpired:

A. May 17th.

Q. What happened on May 17th?

A. I am sorry. May 16th when we got back together.

Q. What happened on May 16?

A. May 16th, evening; Sunday night, myself and Antonio Mendez, we went to Hialeah and stole a car.

Q. When you say stole a car, what are you referring to?

[Defense Counsel]: Objection, Your Honor. May we approach?

THE COURT: Overruled.

Q. When you went to Hialeah, what happened?

A. We stole the car to do a robbery; the 17th to steal another mail truck.

[Defense Counsel]: Objection. Motion for mistrial.

THE COURT: Overruled.

The lawyers and judge then conferred at sidebar, where Mendez's attorney asserted:

This is 404(b) evidence. We had absolutely no notice of any other criminal activity. As a matter of fact, I did not object earlier when they were talk[ing] about that jewelry store episode, because it caught me totally off guard. I was given no notice about any car theft, any attempted robbery or evidence of any robbery of any jewelry store. Based on that I move for mistrial.

After further discussion, the court denied Mendez's motion, stating that Peraza's testimony concerning the stolen car "is really part of res gestae, ... it's inextricably intertwined with the offense that is charged." The court offered to give a curative instruction to the jury to the effect "that they should not consider the fact that the defendant was involved in the stolen car in determining

innocence or guilt in this case." Mendez's counsel, however, requested that the court not give such an instruction, believing that it "would draw further attention to the matter" and thus magnify the prejudice to her client. The district court then instructed the prosecutor not to elicit further testimony that Mendez stole the car, and to move on to another subject. The jury returned guilty verdicts against Mendez on all four counts against him.

Post-trial, Mendez moved to vacate his convictions on Counts III and IV, contending that 18 U.S.C. § 1708 constitutes a lesser-included offense of 18 U.S.C. § 2114, and thus he received multiple punishments for the same conduct in violation of the Double Jeopardy Clause of the Fifth Amendment. The district court denied this motion and ultimately sentenced Mendez to 162 months of imprisonment (120 months on Counts I and II, 60 months on Count III, and 42 months on Count IV; the sentences as to Counts I-III were to run concurrently, with Count IV running consecutively to those) and a 3-year term of supervised release.

Mendez appeals, presenting two claims of error. First, he contends that the district court abused its discretion in failing to exclude Peraza's testimony concerning (1) the planned jewelry store robbery and (2) the automobile theft on May 16. Mendez asserts that this testimony constituted extrinsic evidence of bad acts, rather than *res gestae,* was not inextricably intertwined with the charged offenses and was irrelevant to any aspect of those offenses. In addition, the government failed to notify him, in contravention of the district court's standing discovery order, of its intention to introduce this evidence. Mendez argues that the district court's admission of this testimony severely prejudiced him and constituted reversible error. Next, Mendez contends that section 1708 is a lesser-included offense of section 2114, and thus his convictions under both statutes for the same offense conduct violated the Double Jeopardy Clause.

## II. DISCUSSION

### A. Evidentiary Issues

"The district court's evidentiary rulings are not subject to disturbance on appeal absent a clear abuse of discretion." *United States v. Sellers,* 906 F.2d 597, 601 (11th Cir.1990). Moreover, "[t]he decision to grant a mistrial lies within the sound discretion of the trial judge since he [or she]

is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *United States v. Satterfield,* 743 F.2d 827, 848 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985).

As outlined above, and as she acknowledged, Mendez's attorney failed to lodge a contemporaneous objection to Peraza's testimony concerning the planned jewelry store robbery. Instead, Mendez's lawyer raised that issue after she had objected to, and moved for a mistrial on, Peraza's statements regarding the automobile theft. Indeed, the discussion during the subsequent sidebar conference reveals that the district court considered only the testimony regarding the stolen car to be at issue, and that Mendez's lawyer acquiesced in this determination. After defense counsel articulated that she based her motion for a mistrial on Federal Rule of Evidence 404(b) grounds, the following exchange occurred:

> [Prosecutor]: I have no independent evidence of the robbery of the jewelry store. It comes right from the witness.
>
> THE COURT: That is evidence.
>
> [Prosecutor]: I never heard it before until he started talking. I know nothing about a jewelry store. He is not charged with a jewelry store robbery. What documentation would you turn over?
>
> THE COURT: One second. 404(b) does not have anything to do with documents. She is saying she was not given actual information about this particular incident.
>
> [Prosecutor]: *Stolen car or the jewelry store* [?]
>
> THE COURT: *Stolen car.*
>
> [Prosecutor]: The witness identified two cars.
>
> THE COURT: The fact he stole cars is immaterial.
>
> [Prosecutor]: I will look at the discovery. We knew it was a stolen car. This witness will testify that the car was stolen. He will not testify who stole it or any specifics.
>
> THE COURT: He said they stole it. He said they stole it. Are you saying you were not aware of that?
>
> [Prosecutor]: I knew about it today when I debriefed him.
>
> THE COURT: Why did you not tell them?
>
> [Prosecutor]: To be honest with you, I thought it was in the discovery material. I knew that such a long time ago.

THE COURT:  Was this car used in the operation?

[Prosecutor]: Yes, it was.  I can strike any testimony about the stolen car.

THE COURT:  How long have you been—

[Defense Counsel]:  It's suggestive to the jury.  It suggests to the jury my client will now commit other crimes;  crimes which he is not charged with.

THE COURT:  Isn't this res gestae part of the offense that they stole a vehicle in order to commit the crimes charged?

[Defense Counsel]: No.  If he had said they were in a stolen vehicle, that might be one thing.  It's a criminal act to my client.

THE COURT:  He has not identified your client has stolen the car, yet you know your client stole the car but he did not testify to that.

[Defense Counsel]: I do not know it.  I received no specific 404(b) notice as the rule requires, *and my client is severely prejudiced by this;  particularly compounded by the previous reference to the jewelry store robbery.*  The only remedy here is a mistrial.

THE COURT:  Well, I will not grant a mistrial.  It seems to me this is really part of res gestae, and the way it's inextricably intertwined with the offense that is charged.

However, I will instruct the jury, if you request, *that they should not consider the fact that the defendant was involved in the stolen car* in determining innocence or guilt in this case.

[Defense Counsel]:  Your Honor, the prejudice is so severe.

THE COURT:  You are missing the point.  I just asked do you want the [curative] instruction?

[Defense Counsel]: I am responding.  Because the prejudice is so severe, a curative instruction would draw further attention to the matter.  I think the remedy is a mistrial and not a curative instruction.

THE COURT:  All right.  Your motion for mistrial is denied.  Per your request I will not give a curative instruction....

....

THE COURT:  I will not give a curative instruction per your request.  If at some point in time you do desire a curative instruction, please advise the Court.

(Emphasis added.)  In short, Mendez's lawyer did not assert a proper, contemporaneous objection to Peraza's testimony concerning the planned jewelry store robbery;  in fact, she assented to the district court's determination that the only evidentiary ruling at issue concerned the testimony about the automobile theft.

"The lack of a contemporaneous ... objection requires this court to review the admission of the testimony under the standard of plain error." *United States v. Perez-Garcia,* 904 F.2d 1534, 1540 (11th Cir.1990). "We employ the plain error doctrine "only on appeal from a trial infected with error so "plain" that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.' " *United States v. Bonavia,* 927 F.2d 565, 570 (11th Cir.1991) (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)). "Plain errors are obvious and substantial errors which seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Hope,* 901 F.2d 1013, 1020 (11th Cir.1990), *cert. denied,* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991); *see also United States v. Brazel,* 102 F.3d 1120, 1141 (11th Cir.1997) (failing to remedy plain error results in a "miscarriage of justice"). In conducting plain error analysis, we examine the "context of the entire case." *United States v. Walther,* 867 F.2d 1334, 1343 (11th Cir.), *cert. denied,* 493 U.S. 848, 978, 110 S.Ct. 144, 506, 107 L.Ed.2d 103, 508 (1989). Given the wealth of evidence properly presented against Mendez, we cannot say that Peraza's testimony concerning the planned jewelry store robbery amounts to plain error.

As to Peraza's testimony regarding the automobile theft, the government contends that "even if the trial court abused its discretion in admitting [this] testimony ..., such error was harmless." We agree. "[E]videntiary and other non-constitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *United States v. Hawkins,* 905 F.2d 1489, 1493 (11th Cir.1990), *cert. denied,* 498 U.S. 1038, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991); *see also Sellers,* 906 F.2d at 601 ("Even where an abuse of discretion is shown, nonconstitutional evidentiary errors are not grounds for reversal absent a reasonable likelihood that the defendant's substantial rights were affected.").[2] As outlined above, the government properly introduced ample evidence that

---

[2] Mendez does not argue that the admission of Peraza's testimony concerning the stolen car comprises a constitutional violation. *See* Appellant's Br. at 17-21.

Mendez committed the charged offenses. Even if the district court erred in admitting the testimony concerning the stolen car, we believe that error had no substantial influence on the outcome of this case and thus was harmless. In sum, we affirm Mendez's convictions as against his evidentiary challenges.

B. Double Jeopardy

We review Mendez's double jeopardy claim under the *de novo* standard. *See United States v. Isom,* 88 F.3d 920, 923 (11th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 532, 136 L.Ed.2d 418 (1996), *and cert. denied,* --- U.S. ----, 117 S.Ct. 1325, 137 L.Ed.2d 487 (1997). At the time of Mendez's convictions, section 2114 provided, in relevant part, that

> [w]hoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years....

18 U.S.C. § 2114 (1988). Section 1708 read, in pertinent part to the indictment in this case, that "[w]hoever ... unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been ... stolen, taken, embezzled, or abstracted .... [s]hall be fined not more than $2,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1708 (1988).

The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

> [W]here ... two offenses for which the defendant is punished ... cannot survive the "same elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment....

*United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993) (citations omitted); *see also Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Freyre-Lazaro,* 3 F.3d 1496, 1507 (11th Cir.1993) ("[T]wo crimes are to be treated as the same offense unless each crime requires proof of an additional element that the

other does not require."), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1385, 128 L.Ed.2d 59 (1994).[3]

Accordingly, we look to the elements of the charged offenses in assessing Mendez's challenge.

The district court properly articulated the elements of the section 2114 offenses: "First, that the defendant took from a mail carrier mail, money and property that was in the possession of a mail carrier as charged. Two, that the defendant did so by means of force, violence or intimidation. Third, that the defendant acted knowingly and willfully." This court has held that in order to sustain a conviction under section 1708, "the government must prove that the defendant [1] possessed material stolen from the mail, [2] knew that it had been stolen, and [3] had the specific intent to possess the material unlawfully." *United States v. Hawkins,* 614 F.2d 85, 87 (5th Cir.), *cert. denied,* 446 U.S. 955, 100 S.Ct. 2926, 64 L.Ed.2d 814 (1980).[4] Assessing the elements in light of the facts of this case, *i.e.,* where each robbery and possession was contemporaneous, we find that the elements of the section 1708 offenses are subsumed in those of section 2114. Consequently, under the circumstances here, section 1708 constitutes a lesser-included offense of section 2114. *Accord United States v. Seals,* 545 F.2d 26, 26-29 (7th Cir.1976) (defendant could not be convicted of both robbing a postal carrier under section 2114 and of possessing the same stolen mail under section 1708); *cf. United States v. Wright,* 661 F.2d 60, 62 (5th Cir. Unit B Nov.1981) ("Wright was charged with both robbery of a post office, 18 U.S.C. § 2114, and possession of property stolen in the robbery, 18 U.S.C. § 641. He could not be convicted of both charges."); *United States v. Gibson,* 820 F.2d 692, 694-95 (5th Cir.1987) (defendant convicted under section 2114 for robbing a post office could not also be convicted under 18 U.S.C. § 500 for possession and receipt of stolen money orders taken during the robbery).[5] Thus, we vacate Mendez's section 1708 convictions and

---

[3]We apply the *Blockburger* test where, as here, the statutes at issue do not clearly authorize cumulative punishment. *See* United States v. Kaiser, 893 F.2d 1300, 1304 (11th Cir.1990).

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc* ), this court adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

[5]Decisions of Unit B panels of the former Fifth Circuit constitute binding precedent on this court. Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir.1982).

remand for resentencing under section 2114. *See Freyre-Lazaro,* 3 F.3d at 1507.[6]

## III. CONCLUSION

For the foregoing reasons, we affirm Mendez's convictions under 18 U.S.C. § 2114 (Counts I and II), vacate his convictions under 18 U.S.C. § 1708 (Counts III and IV) and remand to the district court for resentencing.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

---

[6]Our decision in *United States v. Garcia,* 718 F.2d 1528 (11th Cir.1983), *aff'd on other grounds,* 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984), does not compel a contrary result. In that case we rejected the appellants' argument that " "stealing and purloining money of the United States,' in violation of section 641, is a lesser included offense of section 2114 because "the elements of section 641 must necessarily be proven to convict a defendant of section 2114.' " 718 F.2d at 1537. In so doing, however, we relied on the fact that the "element of stealth," which is "usually attributed" to section 641 offenses, was not an element of section 2114. 718 F.2d at 1537. We perceive no similar "element of stealth" in section 1708. Moreover, *Garcia* 's statement that under section 2114, "the government must also prove that there was a "*taking and carrying away* by use of *force,*' " 718 F.2d at 1536 (first emphasis added), undermines the government's position in this case that under section 2114 it "does not have to show that the defendant possessed mail or other property of the United States." Finally, the panel in *Garcia* clearly limited its holding to the "facts of th[at] case." 718 F.2d at 1537. We remain mindful not to undertake double jeopardy analysis "in the abstract." *Kaiser,* 893 F.2d at 1303.