[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16599
Non-Argument Calendar

_____

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 31, 2006
THOMAS  K. KAHN
CLERK**

D. C. Docket No. 04-60130-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARVIN EWART,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 31, 2006)**

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Marvin Ewart appeals his convictions, imposed pursuant to a jury verdict, for conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), and (b)(1)(A), and 846 (Count 1),

and possession of a firearm in relation to a drug trafficking crime, in violation of 21 U.S.C. § 924(c)(1)(A) (Count 2). On appeal, he asserts, inter alia, that the evidence was insufficient to support his conviction on Count 1.[1] After careful review, we affirm.

We review challenges to the sufficiency of the evidence de novo, resolving all reasonable inferences from the evidence in favor of the jury's verdict. See United States v. Rudisill, 187 F.3d 1260, 1267 (11th Cir. 1999). The evidence is sufficient if a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt. United States v. Lluesma, 45 F.3d 408, 409-10 (11th Cir. 1995).

The parties are familiar with the facts and we only summarize those necessary to our sufficiency-of-the-evidence analysis here. Ewart and his

---

[1] Ewart also asserts he received ineffective assistance of counsel when his attorney failed to request a jury instruction on entrapment. This issue was not addressed by the district court. We generally will not consider on direct appeal claims of ineffective assistance of counsel if the district court neither entertained the claim, nor developed a factual record. United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). If there is insufficient evidence in the record to consider this claim on direct appeal, it should be resolved in a collateral proceeding, pursuant to 28 U.S.C. § 2255, where an evidentiary hearing may be held. See United States v. Camacho, 40 F.3d 349, 355 (11th Cir. 1994) ("We will, however, consider an ineffective assistance of counsel claim on direct appeal if the record is sufficiently developed."), overruled in part on other grounds by United States v. Sanchez, 269 F.3d 1250 (11th Cir. 1994). In the instant case, the record is insufficiently developed to consider Ewart's ineffective-assistance claim. Accordingly, we decline to review the claim and dismiss it without prejudice. See Massaro v. United States, 538 U.S. 500, 509 (2003) ("We . . . hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."); United States v. Khoury, 901 F.2d 948, 974 (11th Cir.) (dismissing ineffective-assistance-of-counsel claim brought on direct appeal without prejudice to pursue on collateral relief), modified on other grounds, 910 F.2d 713 (11th Cir. 1990)).

codefendant, Hamilton Forrester, were charged by a superceding indictment with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Ewart and Forrester pled not guilty and proceeded to a joint jury trial.

The government presented the following evidence. Deputy Oswaldo Tianga, of the Broward County Sheriff's Department ("BCSD"), testified about a sting operation involving an attempted armed home-invasion robbery of multiple kilograms of cocaine from a purported "stash house." Deputy Tianga, who was acting undercover, posed as a disgruntled narcotics courier seeking to recruit people to rob a narcotics organization. He told the people he recruited that his father had been the head of the narcotics organization and was deported, after which he received no assistance from the organization. As a result, Tianga indicated, he wanted to retaliate against the organization.

On April 27, 2004, Deputy Tianga met with a confidential informant ("CI") and a man named Albert Moore. At the meeting, Tianga told Moore that he wanted Moore to plan and commit the home invasion robbery of a house that contained at least 15 kilograms of cocaine. Moore agreed to commit the robbery and said that he had two partners. Moore said that one person would go in the

3

home and force everyone to the floor, the second person would tie everyone up with duct tape, and the third person would steal the cocaine.

On May 6, 2004, Tianga met with Moore and Leo Ladaras Strachan to discuss more details of the planned home invasion robbery. At this meeting, Deputy Tianga told Moore and Strachan that he would call them when he knew that the shipment of cocaine had arrived and would be at the target house. On May 19, Deputy Tianga met with Strachan alone and Strachan told him that Moore was unreliable and that he (Strachan) could recruit other people to commit the robbery with him, including someone who was "like [his] brother." About a week later, Deputy Tianga called Strachan and told him that the shipment of cocaine had come in.

On the next day, May 27th, Tianga met Strachan and Ewart, who arrived in a silver Honda Accord and who Strachan introduced as his brother. During the meeting, which took place at Lester's Diner, Forrester remained in the Accord. Thereafter, Strachan, Ewart, and Forrester followed Tianga to a nearby warehouse, where Tianga said he was going to receive a phone call indicating where the cocaine was located.

While at the warehouse, Tianga asked the men if they were armed. In response, Ewart displayed a "baby glock," and Strachan displayed a semiautomatic handgun. Forrester also stated that they all had guns. Tianga told the three men

that there was going to be 30 kilograms of cocaine and that he was supposed to be transporting seven kilograms of it. He told them that they would have to "lay down" the two guards, and Ewart responded "we going to duct tape their butts." Ewart also said that they would have to tie up Tianga and leave him with the guards. Forrester commented to Tianga that "when you're coming out the house we are going to jam you and bring you back in," and stated that they would leave Tianga's portion of the cocaine in the bathroom at the warehouse.

At this point, Deputy Tiangra provided the "takedown signal" for the arrest team and the S.W.A.T team entered the warehouse. Members of the S.W.A.T. team subsequently shot and killed Strachan when he reached for his weapon. Ewart and Forrester were arrested and placed in the back of a patrol car equipped with a recording device. Ewart told Forrester that he would not be charged with anything, but indicated "They can charge me for conspiracy man, you know."

Raymond Mountz, a forensic detective for the City of Fort Lauderdale, testified that he responded to the warehouse after the shooting. At the scene he recovered a semi-automatic handgun loaded with seven cartridges and a nine-millimeter Glock firearm loaded with nine cartridges. He also recovered a role of duct tape from under the front seat of the Honda Accord parked outside the warehouse.

5

Steven Galloway, a special agent with the ATF, testified that he went to the federal courthouse to help move the two prisoners. Ewart and Forrester were placed in two separate rooms. Special Agent Galloway and another agent informed Ewart of his Miranda[2] rights and asked him if he would agree to be interviewed. After signing a waiver-of-rights form, Ewart stated that on the night he was arrested, he was planning to steal at least 15 kilograms of cocaine and was in possession of a gun that Strachan had given to him when he was recruited to participate. He also indicated that he was going to receive a portion of the stolen cocaine as payment for his participation.

Ewart's theories of defense were that he played a minor role in the conspiracy and that Special Officer Tianga failed to follow police procedures during the sting operation because he did not meet with Ewart three times before arresting him. In support of these theories, Ewart called Special Agent Coy, who testified that during the meeting at the warehouse, Ewart expressed concern that the guards inside the house they were going to rob would know that Tianga was involved in the robbery. Ewart did not testify.

Forrester testified in his own defense, indicating that he went to Ewart's house on May 27th because Ewart was going to drop him off at a basketball court. According to Forrester, when he arrived at Ewart's house, Strachan, whom

---

[2]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Forrester had never seen before, was there, and Ewart said that he had to take Strachan to meet a friend. Forrester stated that he was dressed in jeans and a plaid shirt, but had basketball shorts and a tank top on under those clothes. Ewart drove Forrester and Strachan to Lester's Diner and Strachan and Ewart got out and talked with another man. After that, the three men drove to the warehouse and went inside. Forrester said that he did not know anything about a robbery, but did hear Tianga talking about cocaine and guns. Special Agent Galloway also testified that during Ewart's interview, Ewart stated that Forrester had come along for the ride but did not know particularly what was going to happen.[3]

The jury returned a verdict acquitting Forrester and finding Ewart guilty of both charges. Ewart was sentenced to a 235-month term of imprisonment, followed by a 5-year term of supervised release. This appeal followed.

First, Ewart argues that the evidence was insufficient to support his conspiracy conviction. To prove participation in a conspiracy, the government must show (1) the defendant agreed with one or more persons to commit a crime,

---

[3]We can find no clear abuse of discretion in the district court's decision allowing the government to present rebuttal testimony from Special Agent Coy, after the defense rested. Cf. United States v. Mendez, 117 F.3d 480, 484 (11th Cir. 1997) (reviewing the district court's resolution of evidentiary issues for a clear abuse of discretion). From our review of the trial transcript, it is clear this testimony was presented for the permissible purpose of rebutting co-defendant Forrester's testimony during the defense case-in-chief. Cf. United States v. Frazier, 387 F.3d 1244, 1269 (11th Cir. 2004) (en banc)(observing "the purpose of rebuttal evidence is to explain, repel, counteract, or disprove the evidence of the adverse party"), cert. denied,125 S. Ct. 2516 (2005) (internal quotation and citation omitted).

and (2) the defendant knowingly and voluntarily joined or participated in the illegal venture. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1369 (11th Cir. 1994). Ewart argues the government's evidence on the first element was deficient because the government established only an agreement with an undercover agent, Tianga.[4] We disagree.

To support a conspiracy conviction, "[d]irect evidence of an illegal agreement is not necessary; circumstantial evidence may suffice." Id. Even if there are many conspirators, a defendant's guilt can be established if his contact extends to only a few or even one of the co-conspirators. United States v. Toler, 144 F.3d 1423, 1427-28 (11th Cir. 1998). "[I]t takes at least two to conspire neither of which may be government agents or informers." United States v. Wright, 63 F.3d 1067, 1072 (11th Cir. 1995). However, the government may establish the agreement element by way of showing an agreement between the

---

[4] Given the large amount of cocaine involved (15 kilograms), we are unpersuaded by Ewart's challenge to the sufficiency of the evidence to establish the intent element of the charged conspiracy. Cf. United States v. Perez-Tosta, 36 F.3d 1552, 1560 (11th Cir. 1994) (rejecting sufficiency challenge to evidence establishing intent to distribute, given the large quantity of cocaine involved (70 kilograms), from which the jury was free to infer an intent to distribute); United States v. Carrascal-Olivera, 755 F.2d 1446, 1451 (11th Cir. 1985) (rejecting challenge to sufficiency of the evidence to support conviction for conspiracy to possess with intent to distribute cocaine and observing that intent to distribute can be inferred from the amount of cocaine (8 kilograms) involved); United States v. Thomas, 676 F.2d 531, 538 (11th Cir. 1982) (observing "intent to distribute a controlled substance may be inferred solely from possession of a large amount of the substance"). We likewise are unpersuaded by his argument that the government did not prove a "meeting of the minds" because Special Agent Tianga did not comply with the policy of the Bureau of Alcohol, Tobacco, Firearms, and Explosives to meet three times with a suspect before an arrest is made.

defendant and an unnamed co-conspirator who is referenced in the indictment. See United States v. Figueroa, 720 F.2d 1239, 1244-45, 1245 n.8 (11th Cir. 1983) ("an individual can be convicted of conspiracy with 'unknown persons' referred to in the indictment"); United States v. Crayton, 357 F.3d 560, 567 (6th Cir. 2004) (rejecting argument that alleged co-conspirators' acquittal precluded defendant's conviction for conspiring to possess cocaine with intent to distribute, since record presented ample evidence for reasonable jury to have concluded that defendant conspired with "unknown people").

Here, the indictment charged that Ewart had conspired with Forrester and "persons known and unknown to the grand jury." On this record, we are satisfied there was ample evidence from which a reasonable jury could have concluded Ewart reached an illegal agreement with Strachan, irrespective of Forrester's involvement in the conspiracy.[5] This evidence included: (1) Ewart's participation in the conversation at the warehouse regarding the details and planning of the robbery, during which he displayed a gun, and stated that the guards and Tianga would have to be tied up with duct tape; (2) the discovery of duct tape in the car

_____

[5]We need not address the evidence of an agreement between Ewart and Forrester, but we note that this Court has rejected the position that a conspiracy conviction cannot stand based on the defendant's agreement with an acquitted co-conspirator. See United States v. Andrews, 850 F.2d 1557, 1561 (11th Cir. 1988) (en banc) ("Consistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand.").

9

Ewart drove to the meeting; (3) Ewart's statements, during his confession to ATF agents, that he was recruited by Strachan to commit a robbery, was prepared to commit a robbery on the night of his arrest, was going to steal at least 15 kilograms of cocaine, and was supposed to get some of the cocaine for his participation; and (4) Strachan told Deputy Tianga that he could recruit others, including someone "like [his] brother," to commit the robbery and subsequently introduced Ewart to Tianga as "my brother." Simply put, based on the above evidence, viewed in the light most favorable to the jury's verdict, a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt. See Lluesma, 45 F.3d at 409-10. Accordingly, we reject Ewart's sufficiency argument.

**AFFIRMED.**