[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14905
Non-Argument Calendar
_____

D.C. Docket No. 3:18-cr-00016-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH LAMAR WEATHERS, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 1, 2020)

Before WILLIAM PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Kenneth Lamar Weathers, Jr. appeals his convictions for knowingly possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1)[1] and 924(a)(2),[2] and for possessing a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1)[3] and (b)(1)(C).  On appeal, Weathers raises three issues.  First, he argues the district court erred by admitting as prior bad act evidence under Rule 404(b)(2) of the Federal Rules of Evidence a prior Florida conviction for drug possession with intent to distribute imposed after he had pleaded *nolo contendere*.  Second, he argues the district court erred by denying his motion for a *Franks*[4] hearing to challenge the sufficiency of a search warrant affidavit which omitted, in his view, critical facts.  Lastly, he argues the district court erred by admitting text messages showing drug trafficking activity after the

---

[1] "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).

[2] "Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."  18 U.S.C. § 924(a)(2).

[3] "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  21 U.S.C. § 841(a)(1).

[4] *Franks v. Delaware*, 438 U.S. 154 (1978).

2

government failed to provide express notice of its intent to introduce them for Rule 404(b) purposes within a reasonable time before trial. For the following reasons, we affirm.

## I. Background

Following a jury trial in July 2018, Weathers was convicted for knowingly possessing a firearm as a felon and for possessing a controlled substance with intent to distribute.[5] Thereafter, he was sentenced to 72 months of imprisonment and three years of supervised release.

## A. Facts

On September 26, 2017, law enforcement responded to a purported shooting at 2915 West Lloyd Street. During the investigation, police identified Sabrina Skanes as the alleged victim and Kenneth Weathers as a person present at the scene of the shooting. About a week later, on October 4, Skanes's sister called 911 to advise police that "the suspected shooter" had returned to the area and was inside a residence at 2907 West Lloyd Street with Skanes. Officers responded to the 2907 residence, where Skanes's mother met them outside. She informed the officers that the disturbance was actually occurring at a different location—that is, at 1215 North W. Street, Unit B—where Skanes lived. Skanes's mother then led

---

[5] Unrelated to the issues on appeal, Weathers's conviction included a second violation of § 922(g)(1)'s prohibition on knowingly possessing a firearm as a felon which arose from a separate incident a few months prior to the events relevant here.

3

the officers by foot to 1215 North W. Street and told them that there was a male in the rear bedroom who was armed with a firearm.  Skanes's mother then led the officers into Unit B.  In the rear bedroom, the officers found Skanes and Weathers lying on a bed together and a shotgun leaning against the wall—less than three feet away from Weathers.  The officers immediately detained Weathers and unloaded the shotgun,[6] and prepared to charge him for possessing a firearm as a convicted felon.  At some point after Weathers's arrest, Skanes told the police that Weathers was not the individual who shot her a week earlier.[7]

Later that day, an investigator applied for a warrant to search the residence "for other weapons possibly used in the shooting of Sabrina Skanes."  The affidavit supporting the application included most of the facts mentioned in the preceding paragraph, with three notable omissions: (1) that Skanes lived at the address where Weathers was found (1215 North W. Street, Unit B);[8] (2) that Skanes was sleeping

---

[6] Later, the officers photographed and seized the shotgun pursuant to a search warrant.

[7] During a pretrial motion, the district court noted that the parties disagreed about the timing of Skanes's statement that Weathers was not the shooter.  The government claimed she made the statement *after* the officers had already applied for a warrant.  Weathers's attorney argued that Skanes informed the officers that Weathers was not the shooter *before* the officers applied for a search warrant—despite the fact that Skanes's affidavit is vague about the timing of her statement Because this dispute is inconsequential to the ultimate outcome on the motion to suppress, we assume without deciding, as the district court did, that Skanes made the comment *before* the police executed the search warrant.

[8] In fact, the affidavit went so far as to assert that the apartment was "occupied by or under the control of persons unknown" to the investigator.

on the bed next to Weathers when officers found him; and (3) that Skanes told the officers Weathers was not the person who shot her.  A judge issued the warrant and the search was executed that same day.  During the search of Skanes's apartment the officers discovered a handgun, a substantial quantity of controlled substances (cocaine and heroin), various drug-trafficking paraphernalia (including two cell phones), and $3,400 in cash.

### B. Procedure

Before and during trial, Weathers made three challenges to the evidence admitted by the district court that are relevant here.  First, Weathers filed a pre-trial motion *in limine* to exclude, among other things, a prior 2011 conviction following his plea of *nolo contendere* to drug charges.  Second, Weathers filed a pre-trial motion to suppress all physical evidence, statements, and observations made by officers during the October 4 search of Skanes's apartment, and requested a *Franks* hearing in order to determine the sufficiency of the affidavit supporting the search warrant.  Third, at trial, Weathers objected to the introduction of text messages depicting drug-trafficking conversations that were extracted from his cell phones. He asserted that, although the government had previously provided him all of the potential cell phone data it might use at trial, it did not notify him that it intended to use the text messages for the specific purposes of Rule 404(b).  Weathers also

noted that the government did not notify him that an expert would be interpreting those text messages until 11 days before trial.[9]

The court denied all three challenges and admitted the evidence. Notably, the *nolo* conviction evidence was accompanied by two other prior felony convictions for possession with intent to distribute from 2013. Also, following the admission of both the *nolo* conviction and text messages, the court instructed the jury not to consider these pieces of evidence in deciding whether Weathers possessed drugs. Rather, the jury was to determine whether Weathers possessed drugs based on other evidence; only if it found he committed that act were they permitted to consider the *nolo* conviction and text messages as evidence of whether he acted knowingly and with intent to distribute. The jury subsequently found Weathers guilty of one count of possessing cocaine and heroin with intent to distribute.[10] Weathers appeals the district court's denials of his challenges to the admission of these articles of evidence.

## II. Standards of Review

We review a district court's evidentiary rulings for a clear abuse of discretion. *United States v. Flanders*, 752 F.3d 1317, 1334 (11th Cir. 2014). But

---

[9] Weathers received notice on July 29, 2018 that an expert would be called to interpret the text messages. Trial began on July 9.

[10] The jury also found Weathers guilty of both counts of possessing a firearm as a convicted felon.

even if an evidentiary ruling is erroneous, we will not reverse that ruling where the error was harmless. *United States v. Khanani*, 502 F.3d 1281, 1292 (11th Cir. 2007). "An error is harmless unless there is a reasonable likelihood that [it] affected the defendant's substantial rights." *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999).

We review a district court's denial of a *Franks* hearing for abuse of discretion. *United States v. Votrobek*, 847 F.3d 1335, 1342 (11th Cir. 2017). There is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

We review a district court's determination of whether the government gave sufficient pretrial notice under Rule 404(b) for abuse of discretion. *See United States v. Perez-Tosta*, 36 F.3d 1552, 1560–62 (11th Cir. 1994).

## III. Discussion

### A.  Admission of the *Nolo Contendere* Plea & Conviction

Weathers's first argument on appeal is that the district court erred by admitting evidence of his 2011 *nolo* plea and conviction pursuant to Rule 404(b)[11]

---

[11] Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)

as evidence of a prior bad act. Assuming without deciding that he is correct, we find this error to be harmless.

"Evidentiary errors are subject to review for harmlessness." *United States v. Green*, 873 F.3d 846, 866 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). "A non-constitutional evidentiary error does not warrant reversal unless there is a reasonable likelihood that the error affected the defendant's substantial rights." *Id.* at 867; *see also United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010) (stating that even if a district court abused its discretion in admitting evidence, "[r]eversal is warranted only if the error resulted in actual prejudice because it had [a] substantial and injurious effect or influence in determining the jury's verdict."). We review the entire record to determine whether an error resulted in actual prejudice. *Phaknikone*, 605 at 1109. "Overwhelming evidence of guilt is one factor that may be considered in finding harmless error." *United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999).

In light of the overwhelming evidence presented at trial demonstrating Weathers's guilt, we find that the admission of his 2011 *nolo* plea and conviction neither affected his substantial rights nor resulted in actual prejudice. At the scene of his arrest in this case, police found a Crown Royal bag containing fifteen individually wrapped baggies of cocaine. At trial, an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified that the cocaine

appeared to be packaged for distribution.  The Crown Royal bag also contained a wallet with Weathers's Florida Identification Card, approximately $3,400 in cash, a receipt with Weathers's name, and a black cellphone.  This black cellphone, along with another white cellphone that was collected at the scene of Weathers's arrest, contained text messages identified by an ATF agent as consistent with narcotics trafficking terminology.  The cellphones also appeared to belong to Weathers.  Both had a calendar event which stated "Happy Birthday" on the day that was Weathers's birthday; the black cell phone had a message from T-Mobile to "Kenneth"; the white cellphone had several autofill entries for the words "Kenneth Weathers," a message with an attached photograph depicting Weathers, and a text message from Expedia.com to "Kenneth Weathers."  Beneath the mattress on the side of the bed where Weathers was found, police discovered inositol—a chemical commonly used as a cutting agent for cocaine.  Next to Weathers's side of the bed, police discovered a red pouch containing three baggies of heroin.  On the dresser in the bedroom where Weathers was found, police found a digital scale.

The government also introduced other prior bad acts evidence pursuant to 404(b) that were not challenged by Weathers.  The government proffered a certified copy of Weathers's two prior felony convictions from 2013 for "possession of controlled substance."  Moreover, the government made no

9

reference to Weathers's 2011 *nolo* plea or conviction during its initial or rebuttal closing arguments. *See Green*, 873 F.3d at 868 (noting that the fact that the *nolo* conviction "was not emphasized during trial or closing argument" is some indication that it was harmless for the district court to have admitted it in the first place).

For these reasons, we believe one can "reasonably conclude that all the circumstances described above were of far more significance to the jury in deciding whether" Weathers possessed controlled substances with the intent to distribute than his single 2011 *nolo* plea and conviction. *Id.* at 867. Accordingly, even if the district court committed error, the admission of the 2011 *nolo* plea and conviction was harmless.

B. Denial of Motion to Suppress and Request for a *Franks* Hearing

Weathers's next contention is that the district court erred in denying his motion to suppress and request for a *Franks* hearing to determine the sufficiency of the affidavit supporting the search warrant application. We find that the district court did not abuse its discretion in denying Weathers's motion or request.

The Fourth Amendment requires a hearing to be had at the defendant's request "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement

10

is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56; *see also Votrobek*, 847 F.3d at 1342. "Omissions made negligently or because of an innocent mistake are insufficient to warrant suppression of the evidence." *United States v. Whyte*, 928 F.3d 1317, 1333 (11th Cir. 2019). Furthermore, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause. *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009). The defendant bears the burden of showing that the omissions would defeat a probable cause determination. *Franks*, 438 U.S. at 171. The defendant's attack "must be more than conclusory." *Id.* The district court, when making a probable cause finding, considers the totality of the circumstances to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In his motion to suppress and request for a *Franks* hearing, Weathers argued that certain facts were recklessly or intentionally omitted from the search warrant and that, had those facts been included, the reviewing judge would not have found probable cause to support the issuance of the warrant. Specifically, Weathers noted that the search warrant omitted the facts that Skanes was sleeping on the bed next to Weathers when the officers found him and that Skanes told the officers

11

Weathers was not the person who shot her.  On appeal, Weathers basically repeats this argument.

The district court found that the affidavit attached to the search warrant would have been sufficient to support a finding of probable cause even if it had included the omitted facts.[12]  Specifically, the district court noted the affidavit stated that Weathers had been present at the time of the September 26 shooting, and that police were summoned to the residence by a concerned citizen who said Weathers was a suspect in the previous shooting and was in the back of the residence with Skanes.  Moreover, the district court highlighted that all these facts were corroborated when the officers found Weathers, a convicted felon, in the residence with Skanes within three feet of a shotgun.  The district court reasoned that, even the officer's affidavit stated that Skanes had told the police Weathers was not the shooter, the "issuing judge would not have been required to credit Skanes's statement above that of the 911 caller and other evidence."  Further, the

---

[12] Although we resolve this issue by finding that the omitted evidence would not have changed the probable cause determination, it is doubtful that Weathers can demonstrate that the officers acted recklessly or intentionally.  The only evidence provided by Weathers to this end was an affidavit from Skanes stating where she lived and indicating that Weathers was both in bed with her during the raid of her apartment and that Weathers was not the person who shot her.  This evidence suggests that errors were made in the officer's affidavit.  But showing that errors were made does not automatically imply that they were made intentionally or recklessly.  Thus, Weathers's assertions do not necessarily amount to a substantial preliminary showing of a reckless or intentional false statement or omission.  We need not resolve this issue, however, because, even assuming that the facts had been represented to the reviewing judge just as Weathers asserted they should have been, a finding of probable cause was appropriate.

12

district court contemplated, the fact that Skanes (the victim of the previous shooting) was found in bed with Weathers "could even be a reason to doubt the veracity of the victim's statement that he was not the shooter."  For these reasons, the district court found that the inclusion of the omitted facts would not have prevented a finding of probable cause.  We agree with the district court and find that it did not abuse its discretion in denying Weathers's motion to suppress and request for a *Franks* hearing.

### C. Notice for Prior Act Evidence Under Rule 404(b)

Weathers also asserts that the district court erred by admitting text messages referencing prior drug deals pursuant to Rule 404(b) because the government did not provide sufficient notice.  Over three months before trial, on March 27, 2018, the government turned over 2,366 text messages and identified them as potential trial evidence—but it did not indicate it might offer any texts pursuant to Rule 404(b).  Then, on June 29, 11 days before trial, the government notified Weathers it planned to call an expert to interpret several of those text messages in front of the jury—again without any express indication of Rule 404(b) purposes.  Finally, on July 6, just three days before trial, the government provided the specific text messages it intended to introduce at trial, marked as trial exhibits.  At trial, the government used five text messages.  Weathers objected to these text messages by

asserting that the government's notice pursuant to Rule 404(b) was insufficient.[13] He reasserts this objection on appeal.

Under Rule 404(b), a prosecutor who intends to use evidence of a crime, wrong, or other act under Rule 404(b) must, "[o]n request by a defendant in a criminal case . . . provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice."  Fed. R. Evid. 404(b)(2).  What constitutes a reasonable disclosure will depend largely on the circumstances of each case.  *Perez-Tosta*, 36 F.3d at 1562.  We have outlined three factors for consideration to determine whether the government provided reasonable pretrial notice: (1) when the government could have learned of the evidence's availability through timely preparation for trial; (2) the extent of prejudice that the defendant faces from a lack of time to prepare; and (3) the significance of the evidence to the government's case.  *Id.*  Of these three *Perez-Tosta* factors, the second—prejudice to the defendant from a lack of time to prepare—should "weigh heavily in the court's consideration."  *Id.* at 1561.

Addressing these factors out of turn, we start by noting that the government concedes that the third *Perez-Tosta* factor weighs in Weathers's favor; the text

---

[13] Weathers also objected to their admission on hearsay and Rule 403 grounds.  Weathers appeals only the Rule 404(b) ruling.

14

messages were not significant to the government's case in light of the other evidence it had available.

Regarding the first *Perez-Tosta* factor, Weathers asserts that the government was negligent in failing to provide pretrial notice expressly stating the Rule 404(b) purposes of the text messages.  To support this argument, Weathers points to the fact that the government originally intended to introduce the text messages as evidence that was inextricably intertwined with the search of Skanes's apartment.  By focusing solely on the fact that the government neglected to mention the evidence's Rule 404(b) purpose, however, Weathers assumes—without citation to authority—that Rule 404(b) requires the government to state expressly its intent to use evidence for the specific purposes of Rule 404(b).  The district court rejected this assumption because it "elevates form over substance."  We need not resolve whether the district court's characterization was correct because, under the circumstances of this case, any failure by the government to specify its intent to use the text messages pursuant to Rule 404(b) is not consequential in light of the second—and most significant—*Perez-Tosta* factor.

Regarding that second factor, Weathers asserts he was prejudiced due to the volume of the text message disclosure and the government's lack of specificity as to the Rule 404(b) purpose.  He claims these variables forced him to review the texts on the spot at trial when he was unable to do so effectively or make

15

individualized objections.  The district court found that Weathers was not prejudiced by the government's voluminous production or lack of specificity with regards its Rule 404(b) purposes.  Noting that Weathers had been provided the text messages over three months before trial, the district court concluded that, "[c]learly, Weathers was not surprised or unable to adequately prepare for trial based on the Government's failure to specify 404(b) in its notice."  Moreover, the district court noted, even if Weathers would have filed a pretrial Rule 404(b) objection to specific text messages, "the Court's ruling on admissibility would have been the same."

We find that the district court did not err by finding that Weathers did not suffer prejudice from the government's three-month notice.  Based on the March 27 production and July 9 trial date, Weathers had 105 days leading up to trial to review all 2,366 text messages.  *Cf. Perez-Tosta*, 36 F.3d at 1560 (finding the defendant was not prejudiced where the prosecutor disclosed the Rule 404(b) evidence "a few minutes before jury selection").  On appeal, Weathers provides no specific explanation for why that was an insufficient amount of time.  Absent any evidence to the contrary, we hold that it was a sufficient amount of time to review the text messages.  Moreover, even if he had objected to the text messages on Rule

16

404(b) grounds before trial, the district court has made clear it would have overruled that objection.[14]

In conclusion, the district court did not abuse its discretion by admitting the text messages referencing prior drug deals pursuant to Rule 404(b).[15]  The government's notice or lack of evidentiary importance as it pertains to the text messages is greatly outweighed by the fact that Weathers had a copious amount of time to review the texts before trial.  We note that "the abuse of discretion standard allows for a range of choice for the district court, so long as that choice does not constitute a clear error of judgment."  *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (*en banc*); *accord United States v. Osmakac*, 868 F.3d 937, 952 (11th Cir. 2017).  The district court's decision to admit the text messages pursuant to Rule 404(b) was within the range of choices constituting sound discretion and did not constitute a clear error of judgment.  Accordingly, we affirm the district court's admission of the text messages.[16]

---

[14] Further, on appeal, Weathers abandoned his hearsay and Rule 403 trial objections to the text messages.

[15] Even if the district court erred by admitting the text messages, the error is harmless in light of the district court's limiting instruction and the other evidence establishing Weathers's guilt. *See United States v. Langford*, 647 F.3d 1309, 1323 (11th Cir. 2011); *United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002) (relying in part on the trial court's limiting instruction as evidence that any error in admitting certain evidence was harmless).  Thus, "sufficient evidence uninfected by error supports the verdict, [and] reversal is not warranted." *United States v. Mendez*, 117 F.3d 480, 486 (11th Cir. 1997).

[16] After briefing, Weathers submitted a *pro se* notice of supplemental authority and argument pursuant to the Supreme Court's holding in *Rehaif v. United States*, 139 S. Ct. 2191

**AFFIRMED.**

<hr />

(2019). In short, he requests a new trial on Counts I and II on the basis that the district court erred by failing to instruct the jury on the scienter requirement of §§ 922(g)(1) and 924(a)(2), and that he is actually innocent of having knowledge that he belonged to a relevant category of persons barred from possessing a firearm. We are unable to consider this claim because Weathers submitted this supplemental authority *pro se* during a time that he was represented by counsel. 11th Cir. R. 25-1 ("When a party is represented by counsel, the clerk may not accept filings from the party."). But even if we were to consider that claim, Weathers could not "show a reasonable probability that, but for the error[s], the outcome of [his trial] would have been different." *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) (alterations in original) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)). At the time Weathers possessed the firearms in this case, he had been convicted of three felonies in a Florida court. Not only were these felonies disclosed to the jury, but in its final instructions the district court explained that Weathers had stipulated that he "had been convicted" of these felonies *and* that Weathers's "right to possess firearms and ammunition had not been restored." In *Reed*, we determined that "the jury could have inferred that [the defendant] knew he was a felon from his stipulation . . . ." 941 F.3d at 1022. The same is true for Weathers here. Thus, even if we were to consider Weathers's supplemental *Rehaif*-based claim, he could not "prove that the errors affected his substantial rights or the fairness, integrity, or public reputation of his trial." *Id.*

18