[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 14-12830

————————————————

D.C. Docket No. 3:14-cr-00007-RV-1

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

ROBERT WILLIAM GREEN,

Defendant–Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida

————————————————

(November 30, 2016)

Before JORDAN and JULIE CARNES, Circuit Judges, and ROBREÑO,[*] District
Judge.

JULIE CARNES, Circuit Judge:

_____

[*] Honorable Eduardo C. Robreño, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

A jury convicted defendant Robert Green of being a felon in possession of a firearm or ammunition in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Defendant to 262 months in prison followed by 3 years of supervised release. Defendant appeals his conviction and sentence. After careful review, we affirm.

## I.    BACKGROUND

### A.    Facts

In early 2013, Defendant was charged with various state offenses. While on pre-trial release, Defendant wore a court-ordered GPS monitoring bracelet that reported his location to the Santa Rosa County Sheriff's Office. On April 3, 2013, the Sheriff's Office discovered that Defendant was no longer wearing the GPS bracelet. A week later, several officers went to the home of Jodi Simmons, where they believed they would find Defendant,[1] to arrest him. Initially, Ms. Simmons denied that Defendant was inside, but she gave the officers permission to enter the trailer and search for him. When they entered the master bedroom, the officers discovered a man's camouflage jacket hanging on the bedpost. The jacket was a large jacket and Jodi Simmons was not a large person. On the floor next to the bed, and on the same side of the room as the closet, the officers observed a pair of men's shoes. On a nearby nightstand, the officers saw a firearm loaded with .22

---

[1] GPS data showed Defendant's presence at Simmons's trailer every day he wore the GPS bracelet except March 13 and March 14.

2

caliber ammunition, two pipes of the type typically used to smoke methamphetamine, a camouflage bag, and a washcloth.  The camouflage bag contained a digital scale, .6 grams of methamphetamine, .22 caliber ammunition, and empty plastic baggies of the type used to hold drugs or ammunition.  On the floor of the bedroom, near the man's jacket and pair of shoes, the officers also found a blue bag containing tools and ingredients used to manufacture methamphetamine, as well as more .22 caliber ammunition.  The blue bag contained an identification card in the blue bag that did not belong to Defendant or Simmons.

Confronting Simmons with their belief that Defendant was in fact in the trailer, Simmons said, "He went that way," and pointed the officers back toward the master bedroom.  An ATF agent who had accompanied the deputies to the trailer found Defendant hiding in in the master bedroom closet under a pile of clothes.  He was wearing no shoes.

Defendant resisted arrest and struggled with the officers, but eventually they were able to handcuff and place him in a patrol car.  While Defendant was seated in the car, the ATF agent opened the car door and knelt down to speak to Defendant, reading to him *Miranda* rights and indicating that he wanted to talk to Defendant about the firearm that had been discovered.  Defendant told him that he had only recently acquired the gun, having traded some methamphetamine for it.

3

A local deputy, who had been summoned to transport Defendant to the jail, was standing at the back of the car at the time, but did not overhear the conversation between Defendant and the ATF agent. Several months later, when the same ATF agent transported Defendant from local custody to federal court on the present charge, Defendant volunteered to the agent that the firearm discovered in Simmons's trailer was not his, but that instead he owned only a BB gun.

## B.    Procedural History

The Government charged Defendant with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).[2] In support of Defendant's alleged felon status, the indictment listed 12 prior felony convictions. Before trial, Defendant stipulated to being a convicted felon. Accordingly, the district judge redacted the indictment to remove the listing of Defendant's 12 prior convictions in the copy of the indictment to be submitted to the jury. Over Defendant's objection, however, the district judge declined to remove the following sentence in the indictment: "For each of these crimes, ROBERT WILLIAM GREEN was subject to punishment by a term of imprisonment exceeding one year."

---

[2]  18 U.S.C. § 922(g)(1) states:

> It shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition . . . .

4

Also before trial, the Government notified Defendant that it planned to introduce Defendant's 2006 Florida conviction for being a felon in possession of a firearm or ammunition under Federal Rule of Evidence 404(b). Defendant moved *in limine* to exclude the evidence because the conviction resulted from a plea of *nolo contendere*. After a lengthy colloquy with counsel, the district judge denied Defendant's motion and admitted Defendant's prior conviction.

Nonetheless, pursuant to a request by defense counsel and a stipulation between the parties, the jury was informed only that Defendant had been convicted of possession of ammunition by a convicted felon and that the ammunition in question was shotgun shells. The district judge then gave the jury the standard cautionary instruction regarding Rule 404(b) evidence, explaining to them that they could not consider the above evidence to decide if Defendant had committed the acts charged in the indictment, but instead they must first find beyond a reasonable doubt from the other evidence whether Defendant had committed those acts. The court instructed that if the jury first found that Defendant had committed the charged acts, then it could consider the prior conviction to decide whether Defendant had the state of mind or intent necessary to commit the charged act.

At the close of the Government's case, Defendant moved for a judgment of acquittal. He argued that the Government's evidence was insufficient to show that he had actual or constructive possession of the firearm or ammunition. Regarding

5

his confession, Defendant asserted that it was unreliable, uncorroborated by the other evidence, and therefore insufficient to establish constructive possession. The district judge denied Defendant's motion. The jury returned a guilty verdict.

The United States Probation Office prepared a Presentence Investigation Report (PSR). The PSR set an adjusted base offense level of 28. Based on a lengthy and violent criminal record, Defendant had 26 criminal history points.[3] The PSR also recommended that Defendant be sentenced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), based on the existence of four prior qualifying Florida convictions: (1) aggravated assault with intent to commit a felony; (2) resisting an officer with violence; (3) third-degree felony battery; and (4) felony battery causing great bodily harm. The ACCA enhancement resulted in a total offense level of 34. With a criminal history category of VI, the PSR yielded a sentencing range of 262 to 327 months' imprisonment.

Defendant objected to the ACCA classification, arguing that his two felony battery convictions were not categorically violent and questioning whether the PSR's descriptions of the facts underlying the two convictions were drawn from *Shepard* documents. In response, the Government provided the statutory basis, charging document, and judgment for each conviction. The district court overruled Defendant's objection and sentenced Defendant to 262 months' imprisonment.

---

[3]  The Sentencing Guidelines criminal history chart tops out at 13 points.

6

Defendant now appeals his conviction and sentence.

## II.    DISCUSSION

On appeal, Defendant argues that the district court erred by (1) denying his motion for a judgment of acquittal; (2) refusing to change the word "crimes," in the indictment's reference to Defendant's prior convictions, to the singular "crime"; (3) admitting evidence of his 2006 conviction under Rule 404(b); and (4) sentencing him under the ACCA.

## A.    Judgment of Acquittal

Defendant argues that the district court erred by denying his motion for a judgment of acquittal. "We review *de novo* the denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict." *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). "The issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." *Id.* (quoting *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006)).

To prove that Defendant violated § 922(g)(1), the Government had to show (1) that Defendant knowingly possessed a firearm or ammunition, (2) that Defendant was a convicted felon, and (3) that the firearm or ammunition was in or affecting interstate commerce. *United States v. Palma*, 511 F.3d 1311, 1315 (11th

7

Cir. 2008). Defendant contests only the first element: his knowing possession of the firearm and ammunition.

The parties agree that Defendant did not have actual possession of the firearm or ammunition at the time the officers found him: Defendant was in the closet, and the gun and ammunition were nearby. "[But] [t]he government need not prove actual possession in order to establish knowing possession; it need only show constructive possession through direct or circumstantial evidence." *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009) (quoting *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006)). A defendant constructively possesses a firearm or ammunition if he (1) is aware of or knows of the firearm's or ammunition's presence and (2) has the ability and intent to exercise control over that firearm or ammunition. *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011) (per curiam). "However, a defendant's mere presence in the area of [an object] or awareness of its location is not sufficient to establish possession." *Beckles*, 565 F.3d at 841 (quotation marks and citation omitted).

Here, a rational trier of fact could conclude that Defendant had both (1) knowledge of the presence of the firearm and ammunition in the bedroom where he was found and (2) the ability and intent to exercise control over the firearm and ammunition, as required to establish constructive possession. As to the first prong of the constructive possession test, the evidence reasonably permits

8

an inference that Defendant knew that the firearm and ammunition were present in Simmons's bedroom.  Defendant had spent significant time in Simmons's home in the weeks preceding his arrest.  In fact, GPS data derived from the ankle bracelet worn by Defendant from March 12 through April 2, 2013 placed Defendant at Simmons's residence every day he wore the bracelet except for March 13 and March 14.  Hiding in the closet under a pile of clothes when arrested, Defendant was in the same room as the firearm, which was in plain view on the nightstand.  In fact, it appeared that Defendant had recently been in or near the bed next to the nightstand because, based on the shoes on the floor and his shoeless state when found, he had apparently beaten a hasty retreat to the closet upon the arrival of the officers.  Plus, given Defendant's admission to the arresting officer that the firearm on the nightstand was his, one could obviously assume that he knew where he had put the gun.  Thus, the above facts clearly support the jury's finding that Defendant was aware of the presence of the firearm and ammunition.

Regarding the second prong of the constructive possession test, the same facts recited above bolster an inference that Defendant had the ability and intent to control the gun and ammunition.  The loaded gun was on a nightstand next to the bed where Defendant's shoes were placed; the bag containing ammunition and drug paraphernalia were nearby.  As noted, Defendant admitted to Officer Brent Carrier that the firearm was his.  Accordingly, a jury could reasonably infer that

9

Defendant had previously exercised control over the seized firearm, and maintained the ability to continue to do so.

Defendant argues, however, that his admission was uncorroborated and therefore should not have been considered under *United States v. Micieli*, 594 F.2d 102, 107–09 (5th Cir. 1979).[4]  This argument is unpersuasive.  *Micieli* repeats the familiar rule that "a confession [must] be corroborated in order to sustain a conviction; a defendant cannot be convicted solely on the basis of his own admission."  *Id.* at 108.  The *Micieli* court emphasized, however, that "extrinsic evidence of a corroborative nature" can be used to establish the admission's credibility.  *Id.*; *see also Smith v. United States*, 348 U.S. 147, 156 (1954) ("One available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense through the statements of the accused.").  Here, as in *Micieli*, extrinsic evidence substantiates Defendant's admission that he engaged in a drugs-for-firearm transaction.  As recited above, the circumstances surrounding his arrest suggest Defendant's connection to the firearm.  Drug paraphernalia, methamphetamine, and .22 caliber ammunition were also in close proximity to Defendant.  Thus, Defendant's admission was properly considered.  In combination with all the other circumstantial evidence of Defendant's knowing possession of the firearm and ammunition, the jury could

---

[4]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

10

reasonably find constructive possession. Accordingly, the district judge correctly denied Defendant's motion for a judgment of acquittal.

## B.    The Indictment's Reference to Multiple Felonies

Because Defendant stipulated that he had a prior felony conviction, the district court removed from the indictment the list of Defendant's 12 prior felony convictions, before giving the indictment to the jury. Over Defendant's objection, however, the district court refused to change the word "crimes" to "crime" in the following sentence of the indictment: "For each of these crimes, ROBERT WILLIAM GREEN was subject to punishment by a term of imprisonment exceeding one year." The district court explained that it would be improper to re-word the indictment and that doing so would falsely suggest to the jury that Defendant had only one prior conviction.

On appeal, Defendant argues that the indictment's reference to "crimes" (plural, rather than singular) was prejudicial, because it allowed the jury to infer that Defendant had more than one felony conviction, and irrelevant, because a single felony would have satisfied the convicted-felon element of the § 922(g) offense.

We review a district court's evidentiary rulings under an abuse of discretion standard. *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014). "A district court abuses its discretion 'if it applies an incorrect legal

11

standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous.'" *Id.* (quoting *Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010)). To the extent that the district court based its determination on an interpretation of the Federal Rules of Evidence, our review is *de novo*. *Doe No. 1 v. United States*, 749 F.3d 999, 1003 (11th Cir. 2014).

Defendant cites two cases in support of his argument that the district court abused its discretion in refusing to redact the indictment's references to Defendant's previous "crimes." Defendant first points to *Old Chief v. United States*, 519 U.S. 172, 174 (1997), which, in the context of a trial on a § 922(g) prosecution, addressed the question "whether a district court abuses its discretion if it . . . admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of [a] prior conviction." The Supreme Court answered that question in the affirmative, concluding that the district court abused its discretion by admitting the record of a specific conviction in the face of the defendant's general stipulation that he had a prior felony conviction. *Id.* at 191–92. In other words, the stipulation to the fact of a prior felony conviction sufficed, and gilding the lily with information concerning the details of that conviction was error. But *Old Chief* did not examine the issue

12

presented here, which is whether a defendant willing to stipulate to the fact of a prior felony conviction is unfairly prejudiced when the indictment reveals, through its use of the plural word "crimes," that the defendant has more than one prior felony conviction, albeit the nature or number of those convictions is not stated. Thus, while *Old Chief*'s focus on avoiding unnecessary prejudice informs our analysis, it is not dispositive.

The second case Defendant relies on is *United States v. Dortch*, 696 F.3d 1104 (11th Cir. 2012). That decision is also helpful, but ultimately not controlling. In *Dortch*, the district court gave the jury an unredacted copy of the indictment, which listed several of the defendant's previously undisclosed felony convictions. *Id.* at 1110. On review, we held that even assuming the district court erred, any error was harmless. *Id.* at 1111. Because *Dortch* was limited to harmless error review, however, this Court did not decide whether it would have been error had the jury been informed only that the defendant had more than one conviction, without any elaboration on the nature of those convictions. Thus, even had we reached the merits in *Dortch*, the error alleged in that case differs from that alleged here, which is, whether, when the defendant has stipulated to being a convicted felon, there should typically be no need to indicate that he may have sustained more than one prior conviction.

13

Three of our sister circuits have addressed this issue.  The Eighth Circuit has held that "it is not error to allow the government to introduce more than one conviction in a case where only a single conviction is necessary to make the case," even when a defendant stipulates to having a felony conviction.  *United States v. Garner*, 32 F.3d 1305, 1311 (8th Cir. 1994).  Even more to the point at issue here, the Eighth Circuit has also held that a district court does not err by requiring that a defendant stipulate to the existence of "one or more felony offenses" "to avoid misleading the jury into believing [the defendant] had only one prior conviction." *United States v. Einfeldt*, 138 F.3d 373, 376 (8th Cir. 1998) (explaining that "there was nothing unfair about the court's form of stipulation," which was intended to avoid "mislead[ing] the jury as to [the defendant's] criminal history").  Thus, the Eighth Circuit presumably would allow a district court to submit to the jury an indictment that references a defendant's prior "crimes" despite the fact that the defendant stipulated to being a convicted felon.[5]

The Seventh Circuit has taken the opposite approach, cautioning that "indictments and evidence should not make the jury cognizant of any prior convictions beyond those necessary as an element of the offense."  *United States v.*

---

[5]  In an unpublished opinion, the Third Circuit reached a similar conclusion.  *See United States v. Lofton*, 393 Fed. App'x 872, 873–74 (3d Cir. 2010).  But the defendant in that case did not object, so the Third Circuit's review was for plain error.  *Id.* ("[The defendant] has not referred us to a single relevant legal authority definitively holding that the government's introduction of more than one prior conviction to prove the first element of a § 922(g)(1) charge constitutes error *per se*, and we know of no such authority.").

*King*, 897 F.2d 911, 913 (7th Cir. 1990); *accord United States v. Wilson*, 922 F.2d 1336, 1339 (7th Cir. 1991) ("The indictment read to the jury, however, correctly listed only *one* of [the defendant's] three prior convictions."). The Seventh Circuit suggested that the district court erred by "introducing evidence in the form of a stipulation that King had been convicted of felonies on three prior occasions." *King*, 897 F.2d at 913. Evidence of one conviction was sufficient when the defendant had stipulated to having a prior felony. *Id.* Ultimately, however, the court upheld the defendant's conviction on harmless error review. *Id.* at 914.

The Fifth Circuit has taken a similarly dim view of allowing evidence of additional convictions when a defendant has stipulated to being a convicted felon. In *United States v. Quintero*, 872 F.2d 107, 111 (5th Cir. 1989), the defendant argued that the indictment's reference to his three prior convictions for "violent felonies" was prejudicial.[6] In response, the Government argued that it was free to allege more than one prior felony conviction to establish that the defendant was a convicted felon for purposes of § 922(g). *Id.* The Fifth Circuit held that because the defendant had stipulated to having a prior felony conviction, which is all that is necessary to prove the second element of a § 922(g) offense, "evidence regarding [the defendant's] two additional felony convictions was both unnecessary and

---

[6] But it may be that the jury was given a great deal more information than just the fact that the defendant had three violent felony convictions because the opinion also suggests that the district court admitted certified copies of the three convictions. *See id.* at 112.

15

irrelevant, and should not have come before the jury." *Id.* at 111. Nevertheless, the court credited the Government's argument that any error was harmless because "[v]iewing this record as a whole, . . . the trial court's error in admitting evidence of [the defendant's] additional convictions had little, if any, influence on the jury's verdict." *Id.* at 113.

We conclude that the approach adopted by the Seventh and Fifth Circuits strikes a more prudent balance under Federal Rule of Evidence 403 in the mine run of cases, and when redaction is requested by the defendant. Accordingly, we conclude that the district court should have granted Defendant's request to redact the indictment to remove any reference to "crimes" (plural), given that Defendant had stipulated to having a prior felony conviction. First, a district court has the power to redact an indictment to avoid unfair prejudice. *Cf.* Fed. R. Crim. P. 7(d) ("Upon the defendant's motion, the court may strike surplusage from the indictment or information."); *United States v. Adkinson*, 135 F.3d 1363, 1376 (11th Cir. 1998) ("A redaction of an indictment is permissible so long as the elements of the offense charged are fully and clearly set out in what remains.").

Second, the indictment's reference to Defendant's previous "crimes" was, in Rule 403 parlance, cumulative, with the potential to unfairly prejudice Defendant. It was cumulative insofar as the word "crime" would have established the convicted-felon element of the § 922(g) offense with the same force as the word

16

"crimes." As for unfair prejudice, unnecessarily communicating to a jury that a defendant has multiple convictions, which could mean two convictions or dozens of convictions, increases the risk of unfair prejudice. Thus, "the evidence regarding [Defendant's] additional felony convictions added very little to the case against him," *Quintero*, 872 F.2d at 112, while at the same time creating a risk that the jury would "declar[e] guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. We therefore conclude that the district court should have agreed to Defendant's request that it redact the indictment. Nevertheless, reversal is not warranted if, as the Government contends, the failure to redact was harmless. And we conclude that it was harmless here.

As discussed above, the Government presented significant circumstantial evidence that Defendant knowingly possessed a firearm and ammunition. To repeat, Defendant, who had violated a court order by removing his court-ordered GPS tracker device and who was obviously trying to evade the watchful eyes of law enforcement, had spent significant time at Simmons's home, which was the place where the firearm and ammunition were found. When law enforcement officers found him at Simmons's home, he was hiding, shoeless, in a closet in the same room where the loaded firearm was lying in plain sight on a nightstand, along with methamphetamine pipes and a camouflage bag containing ammunition,

17

methamphetamine, and drug paraphernalia.  In the same room, officers found a

pair of men's shoes and a man's camouflage jacket.  To cap all this off, Defendant

subsequently admitted to having traded methamphetamine for the firearm in

Simmons's home.  Given all this evidence, we conclude that any reference to prior

crimes, in the plural, was harmless.

Further, the sentence at issue in the indictment did not state that Defendant

had previously committed 12 felonies; it simply said that he had been convicted of

"crimes."  Nor did the indictment indicate what types of felonies Defendant had

been convicted of or when Defendant had been convicted.[7]  *See Old Chief*, 519

U.S. at 185 ("[E]vidence of the name or nature of the prior offense generally

carries a risk of unfair prejudice to the defendant.").  Finally, the district court

instructed the jury that the indictment was not evidence of guilt.  Accordingly, the

district court's refusal to change the word "crimes" to "crime" in the indictment

was harmless and not a ground for reversal.

## C.    Use of *Nolo* Plea to Prove Rule 404(b) Prior Act

### 1.    Background

---

[7]  Indeed, when it came time to admit, as Rule 404(b) evidence, the judgment on one of
Defendant's prior felonies, the district court accommodated Defendant's concerns by redacting
extraneous information contained in the judgment, including a second conviction for assault that
was memorialized in the judgment.  *See* discussion *infra.*

18

Under Rule 404, evidence of a defendant's prior crimes or bad acts may be admitted for purposes other than proving a defendant's bad character or general propensity to commit a crime. Fed. R. Evid. 404(a)(1). Rule 404(b) provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident . . . .

Generally, "[w]e review for an abuse of discretion a district court's admission of evidence of a defendant's prior bad acts under Rule 404(b)." *United States v. Holt*, 777 F.3d 1234, 1266 (11th Cir. 2015).

Before trial, the Government notified Defendant that it planned to introduce, as prior act evidence pursuant to Rule 404(b), the judgment showing Defendant's 2006 Florida conviction for being a felon in possession of a firearm, ammunition, or an electric weapon. Defendant moved *in limine* to exclude the evidence, arguing that because this conviction was entered based on his plea of *nolo contendere* ("*nolo*"), the conviction was insufficient to permit a conclusion that he actually committed the acts for which he was convicted and sentenced. The district court denied Defendant's motion. The Government agreed, however, to redact the judgment to remove any reference to the felony battery on which Defendant was also convicted, to delete words indicating that Defendant was also convicted of possession of a firearm and electric weapon, and to delete the

19

sentence imposed on Defendant based on this conviction.[8]  Thus, the judgment showed only that Defendant had previously been convicted of possessing ammunition as a convicted felon.  In addition, the parties agreed to stipulate that the ammunition in question was shotgun shells, which the district court observed would further reduce prejudice to the Defendant.  Defendant now challenges the admission of this previous conviction as Rule 404(b) evidence.

We set out a three-part test for determining whether evidence of a prior bad act is admissible under Rule 404(b) in *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc).  The *Miller* test provides that such evidence is admissible if:  (1) the evidence is relevant to an issue other than a defendant's character, (2) there is sufficient proof to allow a jury to find that the defendant committed the act by a preponderance of the evidence, and (3) the evidence's probative value is not substantially outweighed by the risk of unfair prejudice under Rule 403.

On appeal, Defendant argues that his prior ammunition-possession conviction does not satisfy *Miller*'s second or third prongs.  As to his challenge of the third prong, we reject his contention that the probative value of this evidence is outweighed by the risk of unfair prejudice.  As to the second prong, Defendant

---

[8]  The Government also offered to delete from the judgment any reference to the fact that Defendant had entered a nolo plea, but Defendant insisted that this information not be redacted, with defense counsel stating, "Well, if it's coming in over my objection, I'd rather it show *nolo contendere* rather than have them contemplating he pled guilty."

argues that because his 2006 Florida conviction for possession of ammunition by a convicted felon was entered based on a *nolo* plea, this conviction did not constitute proof sufficient to allow the jury to find it more likely than not[9] that Defendant did, in fact, previously possess ammunition after having achieved felon status.

In support of his argument that a *nolo* conviction was not properly admissible to prove that he had actually possessed ammunition in the past, Defendant cited the district court to Federal Rules of Evidence 410 and 803(22)(A).  Rule 410, whose caption is "Pleas, Plea Discussions, and Related Statements" provides:

> **(a) Prohibited Uses**.  In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> > (1) a guilty plea that was later withdrawn;
> >
> > (2) <u>a nolo contendere plea</u>;
> >
> > (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
> >
> > (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

---

[9]  In deciding whether the prosecution has introduced sufficient evidence to make its showing that the defendant engaged in the prior act, the trial court need not make a finding to that effect, but instead it "simply examines all the evidence in the case and decides whether the jury could reasonably find the . . . . fact [at issue] by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988).

21

Fed. R. Evid. 410(a) (emphasis added).

Rule 803, which lists exceptions to the hearsay rule provides, in pertinent part:

**Rule 803.  Exception to the Rule Against Hearsay—Regardless of Whether the Declarant is Available as a Witness**

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

**(22) Judgment of a Previous Conviction.**  Evidence of a final judgment of conviction if:

(A) the judgment was entered after a trial or guilty plea, but not a nolo contendere plea;

Fed. R. Evid. 803(22)(A).

Rule 410 speaks only of a *nolo* plea, not a conviction pursuant to a *nolo* plea, and, as discussed below, this omission has created uncertainty as to whether the latter is also excluded from admission by the rule.  Further, as to the specific question presented in this appeal, we have no precedent deciding whether a criminal conviction pursuant to a *nolo* plea can be admitted to prove a prior act under Rule 404(b).  Given that absence of controlling authority, the only on-point case from this circuit available for the district court's consideration was an unpublished opinion holding that a Florida conviction based on a *nolo* plea does satisfy *Miller*'s second prong; that is, a *nolo* conviction constitutes sufficient evidence to satisfy Rule 404(b)'s proof prong.  *See United States v. Neufeld*, 154 Fed. App'x 813, 820–21 (11th Cir. 2005) (holding that a conviction based on a

22

Florida *nolo* plea could  be used as a basis for proving a similar act under Rule

404(b)).

Non-published opinions, however, do not constitute precedent.  See *United*

*States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013); *see also* 11th Cir. R. 36-2

("Unpublished opinions are not considered binding precedent, but they may be

cited as persuasive authority.").  Therefore, we view the question before us as one

of first impression.  In deciding this question, we look first to precedent in which

we have permitted consideration of a *nolo* conviction; then to what we have said in

the few cases that have presented a question concerning the interaction between a

*nolo* conviction and the federal rules of evidence; and finally to authority from

sister circuits concerning this question.

2.      Use of *Nolo* Convictions, Generally

When a defendant enters a *nolo* plea, whether in state or federal court, that

plea typically results in the issuance of a judgment of conviction.  Accordingly we

refer to such convictions as "*nolo* convictions."  The meaning of the word

"conviction" in a federal statute is a question of federal law unless Congress has

provided otherwise.  *United States v. Mejias*, 47 F.3d 401, 403 (11th Cir. 1995).

As best we can determine, our Court has made no distinction between a conviction

based on a *nolo* plea and one based on a guilty plea or a verdict of guilt after trial.

Indeed, "[o]nce convicted, whether as a result of a plea of guilty, nolo contendere,

or of not guilty (followed by trial), convictions stand on the same footing, unless there be a specific statute creating a difference." *United States v. Williams*, 642 F.2d 136, 139 (5th Cir. Unit B 1981).

Our decision not to treat a *nolo* conviction any differently than a conviction based on a guilty plea or on a verdict of guilty has been applied in several contexts. For example, we have applied statutory sentencing enhancements that are triggered by particular types of convictions, regardless of whether the conviction was obtained via a *nolo* conviction or otherwise. *See*, *e.g.*, *Mejias*, 47 F.3d at 404 (a Florida *nolo* conviction is a "conviction" within the meaning of 21 U.S.C. § 841(b)(1)(B), which provides a sentencing enhancement that doubles the mandatory-minimum sentence from five to ten years for a defendant who has a prior felony drug conviction); *United States v. Maupin*, 520 F.3d 1304, 1308 (11th Cir. 2008) (a Florida *nolo* conviction constitutes a prior "conviction" under 18 U.S.C. § 2252A(b), a child pornography statute that prescribes a sentencing enhancement for an individual previously convicted of a similar offense); *United States v. Drayton*, 113 F.3d 1191 (11th Cir. 1997) (a Florida *nolo* conviction constitutes a prior conviction for purposes of the Armed Career Criminal Act, § 924(e)).

We have treated *nolo* convictions the same as other types of convictions for purposes of applying the Sentencing Guidelines. *See*, *e.g.*, *United States v.*

24

*Anderson*, 328 F.3d 1326 (11th Cir. 2003) (a Florida *nolo* plea qualifies as a "conviction" within the meaning of U.S.S.G. § 2L1.2(b)(1)(B), which triggers a 12-level sentencing enhancement for illegal aliens who are convicted of a crime after having already been removed based on conviction of a crime); *United States v. Jones*, 910 F.2d 760, 761 (11th Cir. 1990) (a Florida *nolo* conviction is a "conviction" for purposes of U.S.S.G. § 4B1.1, the Guidelines' career-offender provision). *See generally United States v. Elliot*, 732 F.3d 1307, 1311–12 (11th Cir. 2013) (summarizing cases).

In contexts not involving sentencing, we have also treated *nolo* convictions as we would any other conviction. *See Qureshi v. INS*, 519 F.2d 1174, 1175–76 (5th Cir. 1975) (deportation of an individual following a criminal conviction, under immigration statute calling for deportation based on this type of criminal conviction, was proper notwithstanding the fact that conviction was obtained by way of a *nolo* plea).

Finally, we have treated a *nolo* conviction as a conviction under Federal Rule of Evidence 609, which permits impeachment of a criminal defendant based on a prior felony conviction. *See United States v. Williams*, 642 F.2d 136, 138–140 (5th Cir. Unit B 1981) (holding that the defendant could be impeached based on the existence of a prior felony conviction, notwithstanding the fact that the conviction resulted from a *nolo* plea).

25

Defendant attempts to distinguish the above cases, however, arguing that each of them addressed a statute or a rule whose applicability was triggered by a prior conviction. Defendant argues that Rule 404(b), which permits admission of prior-acts evidence for the purpose of showing intent, knowledge, and the like, does not concern itself with whether the party whose intent is at issue was convicted based on his conduct. Rather that rule requires the proponent of the evidence to provide evidence sufficient to enable a jury to conclude, under a preponderance standard, that the party actually committed the act at issue. Stated another way, although a prior *nolo* criminal conviction may be used in certain contexts, that does not mean that this prior conviction may be admitted in evidence against the defendant for all purposes.

As to Rule 404(b) specifically, Defendant does not dispute that a conviction obtained following a guilty plea or trial verdict will meet the rule's requirement that the proponent of the evidence offer sufficient proof that the party against whom the evidence is offered did what he is alleged to have done. He does disagree, however, that one can properly infer from a *nolo* conviction that the party has committed the particular act in question, given the peculiar characteristics of such a conviction. As Defendant's objection focuses on the interaction of Rule 404(b) with a *nolo* conviction, we will turn to our limited case authority relating to that subject.

26

### 3.    Our Precedent

Three of our earlier cases address related issues.  In *United States v. Morrow*, the former Fifth Circuit held that the Government cannot use a *nolo* plea to a fraud charge to prove a defendant's knowledge and intent in a subsequent criminal prosecution.  537 F.2d 120, 145 (5th Cir. 1976).  That case involved admission of a judgment of conviction, under Rule 404(b), that revealed the defendant's previous entry of a *nolo* plea.  In finding error, we rested our decision on the fact that the defendant's prior <u>plea</u> of *nolo contendere* had been disclosed, and disclosure of such a plea is not allowed.  *Id.* at 144–45.  We explicitly stopped short of deciding what the outcome would have been had the document introduced been a judgment of conviction based on, but not disclosing, the fact of a *nolo* plea: "The instant case, thus, is not one where we must consider the propriety of the Government using only a conviction that is based on a nolo contendere plea.  [The prior caselaw on which we rely expressed a] clear prohibition on the use of a plea of nolo contendere to show knowledge and intent in a subsequent criminal prosecution." *Id.* at 145.

Five years later, in *United States v. Williams*, 642 F.2d 136 (5th Cir. Unit B 1981), the former Fifth Circuit addressed the use, pursuant to Federal Rule of Evidence 609, of a prior *nolo* conviction to impeach a testifying criminal defendant.  We concluded that evidence of a prior *nolo* conviction was admissible

27

in this context.  Part of the discussion focused on an analysis of the text of Rule 609.  That rule permits, during cross-examination of a witness for the purposes of impeachment, admission of evidence showing that the witness has been convicted of a felony.  We noted that the rule did not distinguish between convictions based on a guilty verdict or guilty plea versus those based on a *nolo* plea.  *Id.* at 138.

We further indicated that the distinction between a plea of *nolo* and a conviction based on a plea of *nolo* is not "inconsequential."  *Id.* at 139.  Instead, "close examination shows, however, that there is a distinct and meaningful difference between the evidentiary use of a plea to a criminal charge and a conviction of a criminal charge."  *Id.*  Focusing on what information a *nolo* plea conveys, we indicated that, for purposes of subsequent proceedings, it "admits nothing" and "is the same as a plea of not guilty."  *Id.*  As to the distinction between a *nolo* plea and a *nolo* conviction, for Rule 609 purposes, we explained that the prosecutor could impeach the testifying criminal defendant by providing proof of the underlying conviction, but the prosecutor could not offer proof of the nature of the plea leading up to that conviction.  *Id.*  Finally, we noted that the difference between a *nolo* plea and a *nolo* conviction is further illustrated by "the stated policies" of Federal Rules of Evidence 410 and 609.  *Id.*  As to Rule 410, we noted that the latter "states that a plea of nolo contendere is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea"

and that "[n]olo pleas create a significant incentive for the defendant to terminate the pending litigation in order to avoid admitting guilty for subsequent litigation." *Id.* (quotation omitted).

The last case in the trilogy is *United States v. Wyatt*, 762 F.2d 908, 911 (11th Cir. 1985). In *Wyatt*, the district court admitted a judgment of conviction entered upon a plea of *nolo contendere*, along with extensive evidence proving the facts that served as a basis for that conviction. The defendant objected only to admission of the evidence of the underlying facts. On appeal, we agreed that admission of the underlying evidence was proper, holding that a conviction based on a *nolo* plea does not "insulate[] the underlying facts from admissibility under Fed. R. Evid. 404(b)." *Id.* at 911.

As to whether there is a meaningful distinction between use of a *nolo* plea and use of a *nolo* conviction, the opinion does not clearly address that question, although it seems to suggest that there is. The discussion focuses on the plea, and its value as an admission, as a matter not permitted to be disclosed: "The government could not have used the nolo plea to 'prove that [Wyatt] had admitted his guilt by his *plea*' and thereby meet its initial burden of proving the defendant committed the act . . . . That would violate Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6)." *Id.* (citation omitted) (emphasis in cited case). Nevertheless, in discussing whether Rule 410 was violated in a way that would constitute plain

29

error, the Court mentioned both the plea and the conviction in stating its belief that error had occurred, although any error was not serious enough to constitute plain error: "Although the government emphasized the nolo plea and resultant conviction . . . out of the jury's presence, it was not emphasized at trial." *Id.* at 912. But the Court then veered back to its focus on the plea, noting that it "was neither emphasized as an admission of guilt in front of the jury nor at closing argument." *Id.* Further, unlike another case in which plain error was found when the prosecutor told the jury that a *nolo* plea "was an admission of guilt," the "error here is far less egregious." *Id.*

The only firm take-away from the holdings in the above three cases is that (1) it is error for a court, for Rule 404(b) purposes, to admit evidence that the criminal defendant has previously entered a *nolo* <u>plea</u> as to the prior act in question; (2) it is not error to admit evidence proving the underlying facts of the purported Rule 404(b) act, even if that act was the subject of a *nolo* plea and conviction; and (3) a testifying criminal defendant may be impeached with evidence of a prior felony conviction that resulted from a *nolo* plea. Given the fact that the question before us is whether a *nolo* conviction can be used to satisfy Rule 404(b)'s requirement of proof that a defendant committed the prior acts sought to be admitted under the rule, none of the above principles compel a particular

30

outcome here.[10]

### 4.    Out-of-Circuit Authority

Determining the circumstances under which a *nolo* conviction can be used as evidence in a federal court proceeding has been a work in progress, given the wording of Rule 410, which prohibits use of a *nolo* plea, but makes no mention of a *nolo* conviction. *Cf. Sokoloff v. Saxbe*, 501 F.2d 571, 574 (2d Cir. 1974) ("[T]he effect of a nolo plea is not governed entirely by logic; if it were, the plea might be abolished . . . . The only relevant question is what are the limitations which the law assures the accused that he will be entitled to invoke, if he files the plea. That is a mere question of what the courts have decided—one alternative is no more rational than the other . . . .") (internal citation and quotation marks omitted).

We are aware of two courts of appeal that have considered the precise question before us. In *United States v. Frederickson*, 601 F.2d 1358 (8th Cir. 1979), where the defendant was charged with making a threat against the life of the

---

[10]  It is true that the judgment of conviction for Defendant's prior felon-in-possession of ammunition charge did indicate that the conviction resulted from Defendant's entry of a *nolo* plea. Under *Morrow*, that would normally constitute a ground for reversal. But this information was communicated to the jury only because Defendant refused the prosecutor's offer to delete the reference to the *nolo* plea. As defense counsel noted, "Well, if it's coming in over my objection, I'd rather it show *nolo contendere* rather than have them contemplating he pled guilty." Accordingly, Defendant cannot fault the Government or the district court for the reference and he has waived any claim based on its inclusion in the judgment. *See United States v. Mezzanatto*, 513 U.S. 196 (1995) (holding that a defendant can waive Rule 410 protections, which the criminal defendant did when he agreed, as a condition to engaging in plea negotiations with the Government, that the latter could impeach him with such statements to the extent that they were inconsistent with any later trial testimony).

31

President, the Eighth Circuit held that the district court did not err in admitting under Rule 404(b) the defendant's prior *nolo* conviction for making a false bomb threat. *Id.* at 1364. Rejecting the defendant's argument that a *nolo* conviction should not have been admitted, the court saw "no reason, for the purposes of admissibility under [Rule 404(b)], to distinguish between a judgment of conviction based on a plea of Nolo contendere and a judgment of conviction obtained in any other manner comporting with due process. It is well-settled that a plea of Nolo contendere constitutes an admission of 'every essential element of the offense (that is) well pleaded in the charge.'" *Id.* at 1365 n.10 (citing *Lott v. United States*, 367 U.S. 421, 426 (1961)). *Frederickson*, however, did not discuss Rule 410.

More recently, the Ninth Circuit has ruled to the contrary. In *United States v. Nguyen*, 465 F.3d 1128 (9th Cir. 2006), the court reviewed an appeal of a revocation of supervised release based on the federal offender's violation of a condition of release prohibiting the commission of any crimes. To prove that violation, the Government introduced two convictions that the defendant had sustained based on a *nolo* plea during his supervision. The court acknowledged that Rule 410 barred only the admission of *nolo* pleas, not the convictions resulting from them. *Id.* at 1131. Nonetheless, the court concluded that admission of the *nolo* conviction should also be precluded because to do otherwise would "produce[] an illogical result": "Rule 410's exclusion of a *nolo contendere* plea

32

would be meaningless if all it took to prove that the defendant committed the crime charged was a certified copy of the inevitable judgment of conviction resulting from the plea." *Id.* As to Rule 803(22), which provides an exception to the hearsay rule for judgments of felony conviction resulting from guilty pleas, but not from convictions resulting from *nolo* pleas, the court noted that the Advisory Committee Notes explained that the rule's carve-out of *nolo* convictions was intended to be "consistent with the treatment of *nolo* pleas in Rule 410." *Id.* at 1131–32. Accordingly, absent the evidence provided by the *nolo* convictions, the court ruled that the Government had failed to prove that the defendant has committed a crime. *Id.*

In *Olsen v. Correiro*, 189 F.3d 52 (1st Cir. 1999), the First Circuit echoed some of the same concerns articulated by the Ninth Circuit about the ramifications of a refusal to read Rule 410 as barring admission of a *nolo* conviction, just as it bars introduction of a *nolo* plea. *Id.* at 60 (the "reasons for excluding the nolo plea itself could well . . . be applicable to the conviction and sentence that result from the nolo plea"). Nonetheless, the court acknowledged that "[t]he evidentiary rules that exclude evidence of nolo pleas do not directly apply to the convictions and sentences that result from such pleas." *Id.* at 58. Specifically, "[t]he text of [Rule 410] does not support Olsen's argument. Only the nolo *plea* itself is barred by the relevant language of the rule." *Id.* at 59.

Ultimately, though, the court found it unnecessary to pick a winner in a contest between the policy goals and the text of Rule 410 because no policy goals were undermined by admitting Olsen's *nolo* conviction. Specifically, in the § 1983 false prosecution claim brought by Olsen, his *nolo* conviction was introduced to show nothing more than the fact of a valid manslaughter conviction and sentence, not to prove that Olsen had actually committed the manslaughter that was the subject of the conviction. Accordingly, the court found "no reason here to expand Rule 410 beyond the scope of its plain language, which in relevant part encompasses only nolo pleas." *Id.* at 62. Moreover, use of the *nolo* conviction for the above purpose was not inconsistent with Rule 803(22), because the conviction was not offered for the truth of the matter asserted. *Id.*

Indeed, Rule 410's prohibition of the admission of a *nolo* plea notwithstanding, courts have permitted admission of a *nolo* conviction where the proponent seeks admission of the judgment to show the fact of conviction or to show something other than that the defendant was actually guilty of the crime to which he entered a *nolo* plea. *See*, *e.g.*, *United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004) (*nolo* conviction admissible where defendant was prosecuted for failing to disclose felony conviction in applying for entry into the country); *Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1220 (10th Cir. 2000) (a civil plaintiff who was fired based on sustaining a criminal conviction in violation of

34

company policy could not "affirmatively use the general rule against admission of nolo contendere pleas to prevent [Employer] from introducing the very evidence it relied upon in making the termination decision"); *Brewer v. City of Napa*, 210 F.3d 1093 (9th Cir. 2000) (civil plaintiff alleging excessive force could be impeached under Rule 609 with prior *nolo* convictions); *Sokoloff v. Saxbe*, 501 F.2d 571, 574 (2d Cir. 1974) ("Where, as here a statute (or judicial rule) attaches legal consequences to the fact of a conviction, the majority of courts have held that there is no valid distinction between a conviction upon a plea of nolo contendere and a conviction after a guilty plea or trial," and hence the *nolo* conviction is admissible). *See also United States v. Vasilios*, 598 F.2d 387, 390 (5th Cir. 1979) (*nolo* plea may potentially be used in cross-examination to expose basis of alleged bias of witness).

### 5.    Conclusion

From all this, we conclude the following.  To have Rule 404(b) prior act evidence admitted, the proponent need only provide enough evidence for the trial court to be able to conclude that the jury could find, by a preponderance of the evidence, that the prior act had been proved.

The prosecutor can, of course, prove the prior act by calling witnesses to testify.  Or, as is often the case when the act has become the subject of a conviction, the prosecutor can prove the act by introducing a certified judgment of

35

conviction.  Indeed, "[i]t is elementary that a conviction is sufficient proof that [the defendant] committed the prior act."  *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997) (citing *United States v. Arambula-Ruiz*, 987 F.2d 599, 603 (9th Cir. 1993) (fact that the defendant was convicted of prior offense is sufficient proof that the defendant committed the prior act).)

Obviously, a conviction based on a verdict of guilty after a trial will suffice.  A jury can convict only if it has found the defendant guilty beyond a reasonable doubt, which standard clearly exceeds the preponderance standard.  Likewise, a conviction based on a guilty plea to the prior crime also suffices to meet Rule 404(b)'s proof requirement.  *Calderon*, 127 F.3d at 1332 (fact that a conviction was based on a guilty plea is inconsequential).  Indeed, "a guilty plea is 'more than a confession which admits that the accused did various acts.'  It is an 'admission that he committed the crime charged against him.'"  *Blohm v. Comm'r of Internal Revenue*, 994 F.2d 1542, 1554 (11th Cir. 1993) (internal citations omitted).  *Accord Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir.1995) (a guilty plea is an admission of criminal conduct as well as the waiver of the right to trial).

Accordingly, had Defendant's prior conviction been based on a plea of guilty, that would be the end of any discussion as to whether the Government had sufficiently proved the prior act.  But Defendant's conviction was based on a *nolo* plea.  And "[a] guilty plea is distinct from a plea of *nolo contendere.  A* guilty plea

36

is an 'admission of all the elements of a formal criminal charge.'  A *nolo contendere* plea is instead a 'consent by the defendant that he may be punished as if he were guilty and a prayer for leniency.'"  *Blohm*, 994 F.2d at 1554 (internal citations omitted).

In deciding the impact of Federal Rule of Evidence Rule 410 on the question before us, Rule 410 does not, as a textual matter, address a *nolo* conviction; instead, it prohibits only the admission of a *nolo* plea.  Indeed, Rule 410 implicitly deals with the inability to use as an admission particular types of pleas or statements made during a proceeding or plea discussions.  Further, the fact that courts have recognized numerous instances in which a *nolo* conviction is admissible for purposes of proving that a conviction occurred argues against a reading that Rule 410 contains an absolute prohibition on the use of *nolo* convictions.  Finally, as to the policy argument that defendants would be loath to enter a *nolo* plea if they were aware that the resulting conviction could later be used in an unrelated criminal case as Rule 404(b) intent evidence, the persuasiveness of that argument is greatly undermined by the existence of long and well-settled legal precedent permitting use of a *nolo* conviction in ways that are much more harmful to a defendant.  For example, that a defendant's sentence for a subsequent conviction is subject to an enhancement, and sometimes a quite substantial one, by admission of a *nolo* conviction would seem a much more

37

sobering prospect than the thought that it might someday be used as Rule 404(b) evidence.

Thus, Rule 410 is an uncertain basis on which to rest a determination that a *nolo* conviction is not admissible. Rule 803(22), however, provides stronger support for an argument that a conviction based on a *nolo* plea should not, as a general matter, be considered for the truth of the matter asserted. Again, Rule 803(22) provides that a prior judgment of conviction based on a *nolo* plea is not included in the list of judgments that are exempt from the hearsay rule. And here the Government sought to admit the conviction to show that Defendant had possessed ammunition in 2006, thereby putting admission of this evidence within reach of that rule.

A final observation concerning analysis of this question: the Government was required to prove the prior act of possession of ammunition by Defendant by a preponderance of the evidence. It is conceivable that a state could require, as a precondition to acceptance of a *nolo* plea, a determination by the court that the State make a showing of defendant's guilt that would serve to satisfy the preponderance standard. The Government, however, has not made that argument generally, nor specifically argued that Florida law sets such requirements.[11]

---

[11] In that vein, it appears that most states do not require the prosecutor to show a factual basis in order for a trial court to accept a *nolo* plea. *See* David P. Leonard, THE NEW WIGMORE: A TREATISE ON EVIDENCE: SELECTED RULES OF LIMITED ADMISSIBILITY § 5.8.3a, p. 638–39 (rev.

Accordingly, our holding is based on what we must assume, at least for this case, to be a generic *nolo* conviction and it is limited to the specific issue before us: whether, in the context of a Rule 404(b) proffer, the Federal Rules of Evidence

---

ed. 2002). Federal law falls within this camp; Fed. R. Crim. P. 11(b)(3) (requiring that federal courts find a factual basis for a guilty plea but not imposing the same requirement for a *nolo* plea). But Florida has been recognized as one of a handful of states that set our procedures for acceptance of a *nolo* plea that are akin to those required for acceptance of a guilty plea. David P. Leonard, THE NEW WIGMORE: A TREATISE ON EVIDENCE: SELECTED RULES OF LIMITED ADMISSIBILITY § 5.8.3a, p. 224 (rev. ed. Supp. 2016) (stating that Florida treats a *nolo* plea as it does a plea of guilty).

Specifically, "[b]efore accepting a plea of guilty or nolo contendere," a Florida judge *must* "determine that the plea is voluntarily entered and that <u>a factual basis for the plea exists</u>." Fla. R. Crim. P. 3.172(a) (emphasis added); *see also Starr Tyme, Inc. v. Cohen*, 659 So.2d 1064, 1068 (Fla. 1995) ("[U]nlike the Federal Rules of Criminal Procedure, which make no provision for a judicial determination of the factual basis of a nolo contendere plea, the Florida Rules of Criminal Procedure require the trial court to satisfy itself that there is a factual basis for such a plea before it can be accepted. Fla. R. Crim. P. 3.172(a)." (internal footnote omitted)); *cf. Wallace v. R.V. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) (explaining that although a state court judge is not constitutionally required to find a factual basis for a *nolo* plea, "[s]tates are free to adopt procedural rules requiring a factual basis as Florida has done in Rule 3.172(a)").

In addition, the Florida Supreme Court has held that a Florida *nolo* conviction sustained during probation provides a sufficient basis to support revocation of that probation based on the commission of a new crime, albeit the probationer is not precluded from asserting his innocence of the charge to which he pled *nolo* prior to the court's adjudication of the revocation violation. *Maselli v. State*, 446 So.2d 1079, 108–81 (Fla. 1984) (a *nolo* plea "is a clearly sufficient basis for [probation] revocation" because before a court can enter conviction based on a plea of *nolo contendere*, the court "must hold a hearing and be satisfied that the plea is voluntary and that a factual basis exists for accepting it"). As noted, however, the Government failed to argue that the requirements imposed by Florida law as a condition to entry of a *nolo* plea satisfy the preponderance of evidence standard.

39

preclude a traditional *nolo* conviction from serving as the basis for proving that the defendant committed the particular prior act at issue.[12]

Translating all the above to this case, we conclude that for purposes of Rule 404(b), Rule 803(22) precludes use of the 2006 *nolo* conviction here to prove that Defendant actually possessed ammunition in 2006. Instead, the Government should have introduced evidence proving that Defendant so possessed ammunition on the date in question.[13] Because it did not do so, there was insufficient evidence for the jury to be able to conclude that Defendant actually committed the prior act at issue.

6.    Harmfulness of the Admission of the *Nolo* Conviction

Evidentiary errors are subject to review for harmlessness. *United States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012). A non-constitutional evidentiary

---

[12]  Our holding does not extend to the use of a *nolo* conviction in proceedings not governed by the Federal Rules of Evidence, such as sentencing hearings or revocation proceedings. *See* Fed. R. Evid. 1101(d).

[13]  The PSR summarizes the facts underlying Defendant's 2006 conviction for possession of a firearm, ammunition or electric weapon as a convicted felon, as follows. Police responded to a report by an individual that he had been threatened at gunpoint by two suspects. Given a description of the vehicle in which the suspects were riding, officers located and stopped a matching vehicle, in which Defendant was found. The individual who reported the threat identified Defendant as the person who had pulled a gun on him and took officers to a nearby cemetery where he had seen the occupants of the vehicle stash something. Officers discovered a shotgun loaded with shotgun shells that matched those found inside the vehicle in which Defendant was riding.

We acknowledge that, faced with such evidence, Defendant would likely have sought admission of only the judgment of conviction in order to prevent the jury from learning the underlying facts. But the Government did not offer to prove those facts and Defendant was therefore not forced to choose.

40

error does not warrant reversal unless there is a reasonable likelihood that the error affected the defendant's substantial rights. *Id.* We look to whether the error had substantial influence and whether enough evidence supports the result apart from the error. *Id. See also United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010) (even if the district court abused its discretion, "[r]eversal is warranted only if the error resulted in actual prejudice because it had [a] substantial and injurious effect or influence in determining the jury's verdict." (quotation marks and citation omitted)).

The Government argues that even if admission of the judgment showing Defendant's conviction for possessing ammunition should not have been admitted, any error was harmless. We agree. The GPS evidence showed that Defendant spent a substantial amount of his time prior to his arrest on April 2 at Ms. Simmons's trailer. The GPS signals indicated his presence both late at night and early in the morning, showing that he stayed overnight. Moreover, a man's camouflage jacket was found in the master bedroom of the trailer. Clearly, it was not Ms. Simmons's jacket, as she was not a large person, and the jacket was large. There was also a man's pair of shoes lying in the same area. When found hiding in the closet, Defendant was wearing no shoes. There was no evidence that any other male was living in the home. Near the shoes and jacket, on a nightstand and immediately visible to the officers in the bedroom, was a handgun loaded with .22

41

caliber ammunition.  Also, near the clothing were two bags containing .22 caliber ammunition; in addition to .22 caliber ammunition, these bags contained methamphetamine and drug paraphernalia.  Next to the loaded gun on the nightstand were two methamphetamine pipes.  Finally, after his arrest, Defendant acknowledged to the ATF agent that he had recently acquired the handgun by trading methamphetamine, although several months later he did switch course on that admission, telling the agent that the only gun he owned was a BB gun.

We conclude there was ample evidence, independent of the Rule 404(b) conviction, to support a conclusion that Defendant was guilty of possessing the firearm and ammunition at issue.  As to whether one could conclude that admission of this evidence had a substantial influence on the verdict, we conclude that it did not.  The jury was necessarily aware that Defendant had a prior conviction because he had stipulated that he did.  So the fact of a prior conviction was not news to jurors.  As to the specific conviction introduced, it was a conviction based on Defendant's possession of shotgun shells seven years before the events underlying the present prosecution, not possession of ammunition for a handgun.  Accordingly, while it is true that Defendant's present charge was also for possession of ammunition, along with possession of a firearm, his prior possession of shotgun shells was, in the scheme of things, relatively benign when compared to the other circumstantial evidence suggesting Defendant's constructive possession

42

of the handgun located just a few feet from where he was found hiding and even closer to items of men's clothing that the jury could reasonably infer were his. One can reasonably conclude that all the circumstances described above were of far more significance to the jury in deciding whether Defendant constructively possessed the loaded firearm and ammunition at Simmons's trailer than was this 7-year old conviction for possessing shotgun shells.

Moreover, the court instructed the jury that it must first conclude that Defendant possessed the firearm and ammunition before it considered the Rule 404(b) evidence concerning his intent or lack of mistake. Finally, the 2006 conviction was not emphasized during trial or closing argument. When it was introduced, the court immediately gave a cautionary instruction as to the proper use of the evidence, which was repeated in the court's final instructions to the jury. As to the closing argument, the prosecutor acknowledged up front that the "whole issue" in the case was whether or not on April 10, 2013 Defendant "was in possession of that firearm and that ammunition." The prosecutor made only one reference in his closing argument to the 2006 conviction, and the reference was not provocative, but rather tepid. The prosecutor indicated that the conviction for possession of ammunition did not suggest that "because he was convicted of that in the past, he must be guilty of this. Certainly does not mean that, and you can't use it for that purpose." Instead, the prosecutor said, the jury could consider the

43

conviction for "a very limited purpose, and that is whether or not the defendant had the intent to possess those items. And I submit to you that when you consider all of the evidence in the case, the evidence demonstrates that he had the knowledge and the intent to take possession of the firearm and the ammunition in this case." Other than this isolated reference, the entirety of the prosecutor's summation and rebuttal argument focused on why the evidence concerning the events at the time of the arrest made it reasonable to conclude that Defendant constructively possessed the firearm and ammunition found at the trailer where he was staying.

For the above reasons, we conclude that admission of the 2006 conviction was harmless.

**D.    Armed Career Criminal Act Sentence**

The Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), "prescribes a 15-year mandatory minimum sentence if a defendant is convicted of being a felon in possession of a firearm following three prior convictions for a 'violent felony.'" *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Defendant's PSR identified four ACCA-qualifying convictions: (1) aggravated assault with intent to commit a felony in violation of Fla. Stat. § 784.021; (2) resisting an officer with violence in violation of Fla. Stat. § 843.01; (3) third-degree felony battery in violation of Fla. Stat. § 784.03; and (4) felony battery causing great bodily harm in violation of Fla. Stat. § 784.041.

Defendant appeals his sentence under the ACCA, arguing that his two prior felony battery convictions are not "violent felonies" as defined by the ACCA. Defendant concedes, however, that his convictions for aggravated assault and resisting an officer with violence qualify as predicate offenses. This means that only one of Defendant's felony battery convictions must satisfy the definition of a "violent felony" under the ACCA.

We review *de novo* the issue of whether a prior conviction qualifies as a "violent felony" under the ACCA. *United States v. Canty*, 570 F.3d 1251, 1254 (11th Cir. 2009). Only the ACCA's enumerated offense clause and elements clause remain intact. *See Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (striking down the ACCA's residual clause as unconstitutionally vague). At oral argument, the Government conceded that the district court may have relied on the residual clause at sentencing (which took place before *Johnson*) in determining that felony battery under § 784.041 categorically satisfied the definition of "violent felony" under the ACCA. Moreover, battery is not listed under the enumerated offense clause. Thus, if either felony battery conviction is to count, it must satisfy the elements clause.

Under the elements clause, a crime constitutes a "violent felony" when it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). We begin our analysis

45

with the categorical approach, but, if the felony battery statutes are divisible and *Shepard*[14] documents are available, we may also use a modified categorical approach to evaluate under which alternative element of the statutes Defendant was convicted.  *See Mathis*, 136 S. Ct. at 2249.

Defendant argues that neither of his felony battery convictions categorically qualifies as "violent felonies" under the elements clause of the ACCA.  And the Supreme Court has held that Florida battery under § 784.03 does not categorically satisfy the ACCA's elements clause because it can be accomplished by any intentional touching, "no matter how slight."  *See Johnson v. United States*, 559 U.S. 133, 138, 130 S. Ct. 1265, 1270 (2010) ("*Curtis Johnson*"). But this still leaves Defendant's battery conviction under § 784.041.  In arguing that a battery conviction under this statute is not categorically a violent felony, Defendant relies on our recent decision in *United States v. Vail-Bailon*, 838 F.3d 1091 (11th Cir. 2016), which held that Florida felony battery under § 784.041 is not categorically a "crime of violence" under § 2L1.2 of the Sentencing Guidelines because it can be committed by a mere touching. The elements clause under the ACCA is identical to the elements clause under § 2L1.2, *see* U.S.S.G. § 2L1.2(b)(1)(A) cmt. n.1(B)(iii). The opinion in *Vail-Bailon,* however, was vacated when our full court

---

[14] *Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005).

decided to hear the case en banc. *See United States v. Vail-Bailon*, 2016 WL 6833335 (11th Cir. Nov. 21, 2016).

Nevertheless, even assuming that Florida battery under § 784.041 does not categorically qualify as a violent felony under the elements clause, it or the battery conviction under § 784.03 could potentially qualify under the modified categorical approach. Importantly, *Curtis Johnson* left open the possibility that, if *Shepard* documents are available, then we may be able to determine under which version of the statutory elements a defendant was convicted. *See Curtis Johnson,* 559 U.S. at 137, 130 S. Ct. at 1269 (applying the categorical approach and looking to the "least of the[ ] acts" because *Shepard* documents were not available).

The statutes for both battery under § 784.03 and battery under § 784.041—which share the same first element—are divisible. The Supreme Court has explained that § 784.03[15] is "disjunctive, [and] the prosecution can prove a battery in one of three ways . . . [that he] '[i]ntentionally caus[ed] bodily harm,' that he 'intentionally str[uck]' the victim, or that he merely '[a]ctually and intentionally touche[d]' the victim." *See Curtis Johnson*, 559 U.S. at 136–37. So, if *Shepard* documents can help us determine that Defendant was convicted under the "striking" element for one of the two convictions, we should affirm his sentence.

---

[15] Under § 784.03(a)(1), a battery occurs when a person "1. [a]ctually and intentionally touches or strikes another person against the will of the other" or "2. [i]ntentionally causes bodily harm to another person."

47

*See Shepard*, 544 U.S. at 26, 125 S. Ct. at 1263 (holding that, in determining whether a past conviction qualifies as a violent felony under the ACCA, a sentencing court "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information").

*Shepard* documents are available for Defendant's third-degree felony battery conviction under § 784.03. The Government provided the charging document, judgment of conviction, and a sentencing recommendation containing Defendant's written plea agreement. The statutory basis and charging document are not helpful because they show that Defendant "actually and intentionally touch[ed]" *or* "str[uck]" the victim against his will. *See* D.E. 48-4 at 5. But the sentencing recommendation containing Defendant's plea of *nolo contendere* to the battery offense expressly incorporates, as the factual basis for the plea, an arrest form indicating that Defendant "struck" another against his will. *See id.* at 9–10.

Significantly, the sentencing recommendation included a checked box that reads "[t]he arrest report which is a part of the court record filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for the plea." *Id.* at 9. Defendant's signature appears on the same page as the checked box and is directly below the following acknowledgment:

48

By signing this Sentencing Recommendation, I, the undersigned defendant in this case, agree that I have read and understand the contents of this document, and if represented by an attorney, that I have discussed with my attorney all of the ramifications or consequences of entering a plea of guilty or nolo contendere to these charges . . . and my attorney has not compelled or induced me to enter into this plea agreement by any force, duress, threats, pressure or promises.

*Id.*

The incorporated arrest report (a warrant including a sworn affidavit from the investigating police officer) described the events leading to Defendant's arrest as violent and not merely involving an intentional unwanted touching. It states that the injured victim told the officer that "a white male came from behind and hit him in the face . . . [and] continued to hit him and [that the victim] did not know why he was getting beat up." D.E. 48-4 at 10. Two other witnesses identified the Defendant and confirmed that he was "hitting" the victim. *See id.*

Defendant has objected to the arrest report's description of the facts in the district court and on appeal. Specifically, he challenges whether the arrest report (or affidavit) is a *Shepard*-approved document. We are not, however, relying on an arrest report in isolation. *Cf. United States v. Diaz-Calderone*, 716 F.3d 1345, 1350 (11th Cir. 2013) (reviewing statements in a recording of a defendant's change-of-plea hearing rather than sworn police affidavits alone to determine whether the "arrest affidavit established a factual basis" for his plea of *nolo contendere*). Instead, we look to judicial records of Defendant's plea—a

49

sentencing recommendation and a signed, written agreement that clearly indicate that the arrest form served (with Defendant's agreement) as the factual basis for his *nolo* plea.

As we have already pointed out, Florida is one of the few states that requires a factual basis for a *nolo* plea. This is important because although a defendant generally does not admit guilt by entering a *nolo* plea, Florida law requires an extra step. A Florida court must first "determine that the plea is voluntarily entered and that a factual basis for the plea exists." Fla. R. Crim. P. 3.172(a). Furthermore—and distinct from our analysis of *nolo* convictions in the Rule 404(b) context—we generally treat a conviction based on a *nolo* plea as any other conviction for sentencing purposes. *See, e.g., Drayton*, 113 F.3d at 1193 (finding that a Florida *nolo* conviction constitutes a prior conviction under the ACCA).

In this case, Defendant signed the sentencing recommendation in the presence of his attorney and has not given us any reason to doubt that he voluntarily entered his plea of *nolo contendere* to the third-degree felony battery offense under § 784.03. Had Defendant disagreed with the factual basis contained in the arrest report at the time of his plea, he could have refused to sign the agreement, indicated to the court that he did not understand, or asked his counsel for clarification. Moreover, the plea agreement gave two options for providing a factual basis. Defendant, through his attorney, could have asked that the factual

basis be written into the blank lines provided in the plea agreement rather than checking the box next to the paragraph incorporating the arrest report. Instead, Defendant (and his attorney) signed directly below the checked box expressly indicating his assent to the incorporation of the arrest report as the factual basis for his *nolo* plea.

In sum, *Shepard* documents show that Defendant was convicted under the "striking" element, and not the "actually and intentionally" touching element, of § 784.03. Applying the modified categorical approach, Defendant's felony battery conviction under § 784.03 was a "violent felony" under the elements clause. As a result, Defendant had at least three ACCA qualifying convictions, thus, we need not decide whether Defendant's felony battery conviction in violation of § 784.041 was also a "violent felony."[16] We therefore affirm Defendant's sentence under the ACCA.

### III.    CONCLUSION

For the reasons stated above, we **AFFIRM** Defendant's conviction and sentence.

---

[16] At his sentencing in the district court, Defendant objected to the use of a similar sentencing recommendation with a written plea agreement for the § 784.041 felony battery conviction because the box containing the language incorporating the arrest report was *not* checked. We acknowledge this distinction but need not address whether this would have impacted the result here had the box not been checked in the sentencing forms for Defendant's § 784.03 felony battery conviction.