[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13642

_____

D.C. Docket No. 1:12-cr-00001-WLS-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELBERT WALKER, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 1, 2019)

Before MARTIN, JILL PRYOR, and JULIE CARNES, Circuit Judges.

JULIE CARNES, Circuit Judge:

Defendant Elbert Walker, Jr. appeals his convictions after a jury found him

guilty of conspiracy to commit arson, bank fraud, mail fraud, wire fraud, and

bankruptcy fraud, to possess a forged security, and to make false declarations in court, two counts of being a felon in possession of a firearm, and possession of a firearm with an obliterated serial number.  After careful consideration, we affirm Defendant's convictions.

## I.    BACKGROUND

### A.    The Charges

Defendant and his relatives, Shirley and Darryl Burk, were charged with one count of conspiracy to commit multiple objects, including arson, bank fraud, mail fraud, wire fraud, bankruptcy fraud, possession of a forged security, and making false declarations in court, in violation of 18 U.S.C. §§ 371 in connection with 152(3), 513, and 1623; 844(n) in connection with 844(i); and 1349 in connection with 1341, 1343, and 1344.  Defendant was also charged separately with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). Defendant and the Burks elected to have the charges tried before a jury.

### B.    Conspiracy to Commit Arson

During its case-in-chief, the Government presented evidence of a scheme spanning more than a decade in which Defendant, the Burks, and others conspired to acquire various properties and transfer them among each other, to obtain insurance coverage on the properties, to set fire to the properties, and then to

2

fraudulently make insurance claims and collect money for the fire losses. The evidence indicated that the conspiracy involved five properties, nearly all of which Defendant owned or managed, in Georgia.

1.      1097 Bondvilla Drive, Cairo, Georgia

In 1996, after securing a loan from SGE Mortgage on his property located at 1097 Bondvilla Drive, Cairo, Georgia, Defendant sold the property to Eddie Dixon, who falsified documents to obtain a loan and then acquired insurance coverage from State Farm. Defendant financed a part of the purchase and took a second mortgage on the property. Three months later, the property was damaged by fire. Dixon submitted a personal-property-loss claim and a $72,330 repair estimate from Northside Home Remodeling, a company owned by Defendant and Darryl Burk. State Farm denied Dixon's claim because it concluded that the fire was intentionally set, but it paid SGE approximately $35,000 to satisfy Dixon's indebtedness on the property.

In April 2001, Shirley Burk moved into the Bondvilla property, which she rented until October 2001, when she entered into an installment sales agreement with Defendant. In November 2001, Burk applied for insurance on the property, falsely declaring that she had not had any insurance losses within the past three years. The insurance company initially granted the application, but informed Burk on December 3, 2001 that her coverage would be cancelled effective January 4,

3

2002.  On January 1, 2002, the Bondvilla property was damaged by fire.  An expert testified that the fire was intentionally set.  When the insurer refused to pay Burk's claim, Defendant and Burk filed lawsuits against the insurer, which were ultimately dismissed.

In early 2006, Defendant asked Michelle Spooner, an Atlanta-area mortgage broker, to help Shirley Burk get a loan to buy the Bondvilla property.  Defendant faxed supporting documents to Spooner, but Spooner had concerns about the legitimacy of the documents and was unable to verify that Burk had transferred the down payment to Defendant.  Consequently, Spooner altered money orders she had received in another closing to make it appear that the transfer had occurred and then sent the altered copies to the lender.  To obtain insurance coverage on the Bondvilla property, Burk again falsely represented that she had not had any insurance losses in the past five years.  When her $63,000 loan closed, she gave Defendant at least $27,000 of the proceeds.

The Bondvilla property was again damaged by fire in August 2006, and an expert testified that this fire also was intentionally set.  Shirley Burk submitted a $57,740 insurance claim, and later submitted a revised claim for $81,248.  To support her claim, Burk submitted a repair estimate from Northside Home Remodeling, the company owned by Defendant and Darryl Burk, and stated in her proof-of-loss forms that she had purchased furniture from RJ Furniture, another

company owned by Defendant.  The insurance company paid Burk a settlement of $22,000 in January 2008.

### 2.    410 Oak Street, Thomasville, Georgia

In October 2000, Defendant obtained insurance on a property he owned at 410 Oak Street in Thomasville, Georgia.  In November 2000, while Shirley Burk was renting the Oak Street property from Defendant, the property was damaged by a fire.  Defendant submitted a proof of loss and the insurance company issued a check for $45,000 to cover the losses.  Burk also received a payment from the insurance company for her personal losses.

### 3.    555 Baggs Ferry Road, Camilla, Georgia

In June 2001, Defendant bought a trailer located at 555 Baggs Ferry Road in Camilla, Georgia for $1,200.  Darryl Burk paid the rent for the lot using a check drawn on the bank account of a business purportedly located at the same address as Defendant's RJ Furniture store.  He also obtained insurance on the trailer, falsely stating in his application that he had paid $6,500 for the trailer and had made improvements bringing its value to $10,000.  A fire damaged the trailer on July 26, 2001, while Tomeka McIntyre was renting it from Defendant.  An expert testified that the fire was intentionally set.  Darryl Burk claimed a loss on the trailer and received $10,000.  At trial, McIntyre testified that Defendant had discussed a plan

with her, where she would move into a house for a couple months and then Defendant would "set it afire and get some insurance money."

### 4.    3841 New Hope Road, Pelham, Georgia

In January 2004, Shirley Burk submitted a proof of loss to her insurer, seeking $17,377 for personal property damaged in a December 6, 2003 fire at 3841 New Hope Road, Pelham, Georgia.  The insurer rejected the claim for insufficient documentation, but it paid Burk $5,158 to compensate her for some of the claimed losses.

### 5.    605 Harney Street, Camilla, Georgia

In August 2006, Defendant asked Spooner to help Angel Mickens get a loan to purchase a residence at 605 Harney Street in Camilla, Georgia, which Defendant rented out and managed for his daughter, who owned the property.  While meeting with Defendant at the residence, Spooner commented that the house smelled like smoke, and Defendant informed Spooner that it had previously been damaged by fire and that "sometimes I burn down houses."

### C.    Firearms Charges

As to the firearms charges, the Government presented evidence that law enforcement agents found five guns in Defendant's bedroom when they searched his house in connection with the alleged conspiracy in 2007.  During a second search of Defendant's home in December 2011, agents found two more guns, including a shotgun with an obliterated serial number.

6

When investigating Defendant, agents found records of a 1976 New Jersey conviction for an "Elbert Walker" on charges of welfare fraud conspiracy and obtaining money by falsely pretending to be poor. The conviction initially resulted in a sentence of not less than two years and not more than three years, but the sentence was later reduced to 364 days plus three years' probation. To establish that Defendant was the same Elbert Walker who had been convicted in New Jersey, the Government presented testimony showing that Defendant's known fingerprints matched the fingerprints on file for the Elbert Walker arrested in New Jersey. In addition, the New Jersey fingerprint card listed Defendant's date of birth and wife's name. Further, the Government introduced evidence found during the search of Defendant's home showing that he had lived in New Jersey at the time of the conviction.

## D.    Verdict and Post-Trial Motions

Following the Government's case-in-chief, Defendant moved for a judgment of acquittal on all counts, arguing that insufficient evidence showed that the alleged co-conspirators entered into an agreement, that he was the same individual who was convicted in New Jersey, and that the gun with an obliterated serial number belonged to him. The district court reserved ruling on the motion.

After the jury returned a guilty verdict, convicting Defendant on all counts, Defendant renewed his motion for a judgment of acquittal. The district court

denied the motion in a written order, concluding that the Government's evidence was sufficient to support the jury's finding that there was a common purpose among Defendant and the Burks to set fires and fraudulently collect insurance money. The court noted that all of the fires alleged in the indictment followed the same pattern: the owner or tenant obtained insurance; shortly thereafter a fire occurred; and then an insurance loss claim was filed, usually with the same form used in previous fire incidents. The court also found the evidence sufficient to support Defendant's convictions on the firearms charges.

At sentencing, the court imposed concurrent prison terms of 121 months for the conspiracy charge, 120 months for each of the 18 U.S.C. § 922(g) firearm charges, and 60 months for possession of a firearm with an obliterated serial number.

## II.　DISCUSSION

On appeal, Defendant argues that the district court erred in denying his motion for a judgment of acquittal on the conspiracy-to-commit-arson charge. He also argues, for the first time, that the Government committed prosecutorial misconduct when it represented to the jury that Defendant's prior New Jersey conviction was for a crime punishable by more than one year's imprisonment. These arguments are addressed in turn.

**A.    Whether the District Court Erred in Denying Defendant's Motion for a Judgment of Acquittal**

Under Federal Rule of Criminal Procedure 29, a district court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). We review the district court's denial of a motion for judgment of acquittal *de novo*, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict." *United States v. Green*, 873 F.3d 846, 852 (11th Cir. 2017) (quotation marks omitted). We then ask whether the jury "reasonably could have found guilt beyond a reasonable doubt." *Id.* (quotation marks omitted).

To support a conviction for conspiracy to commit arson, the Government must prove that the defendant conspired to (1) maliciously damage or destroy (2) by means of a fire or explosive (3) a building, vehicle, or other real or personal property, and (4) that the property was used in interstate commerce or in an activity affecting interstate commerce. 18 U.S.C. § 844(i), (n). A conspiracy occurs when two or more individuals agree to commit a crime and the defendant knowingly and voluntarily joins the agreement. *United States v. Gonzalez*, 834 F.3d 1206, 1214–15 (11th Cir. 2016). The Government may establish a conspiracy through circumstantial evidence. *Id.*

In his appellate brief, Defendant argues that insufficient evidence showed a conspiracy to commit arson because "there was no evidence presented at trial that

9

[he] participated in the arsons, that he knew of the arsons prior to their occurrence, or that he was somehow otherwise complicit in the arsons which gave rise to the purported fraudulent issuance of insurance checks."[1]  Yet, in this same brief, he also acknowledges evidence that belies this argument:  specifically, Spooner's testimony that Defendant had admitted "sometimes I burn down houses" and McIntyre's testimony that Defendant had asked her to participate in a plan where she would move into one of his properties for a short period, after which he would "set [the house] afire and get some insurance money."

In any event, even setting that testimony aside, the Government presented substantial circumstantial evidence supporting the jury's conclusion that Defendant entered into an agreement with the Burks and others to use fire to damage or destroy multiple properties in order to collect insurance proceeds.  Specifically, the evidence showed a pattern of conduct between 1996 and 2006, where Defendant, the Burks, or a third party would acquire insurance coverage on a property owned,

---

[1]  By failing to develop an argument on appeal, Defendant has abandoned a sufficiency-of-the-evidence challenge regarding the other objects of the charged conspiracy, including bank fraud, mail fraud, wire fraud, bankruptcy fraud, possession of a forged security, and making false declarations in court.  *See United States v. Thomas*, 242 F.3d 1028, 1033 (11th Cir. 2001) (holding that an appellant had abandoned arguments not raised in his opening brief and only mentioned in a cursory fashion in his reply brief).  Accordingly, we confine our discussion to the conspiracy-to-commit-arson charge.  We note, however, that a sufficiency challenge to the other objects of the charged conspiracy would be meritless because the evidence supported a finding that arson was an object of the conspiracy and "[a] guilty verdict in a multi-object conspiracy will be upheld if the evidence is sufficient to support a conviction of any of the alleged objects." *United States v. Ross*, 131 F.3d 970, 984 (11th Cir. 1997) (citing *Griffin v. United States,* 502 U.S. 46, 56–60 (1991)).

or recently sold, by Defendant.  Shortly thereafter, the property would experience a fire, and Defendant, the Burks, or an insured third party would submit an insurance claim for alleged losses.  Expert testimony established that several of these fires were intentionally set, and at least one insurance company denied a claim after reaching the same conclusion.  Given that Defendant and his associates repeatedly employed the same method of defrauding insurance companies—acquiring insurance coverage, intentionally setting fires, and then making fraudulent insurance claims—the jury reasonably could infer Defendant's knowing and voluntary participation in an agreement to commit arson.  Accordingly, the district court properly denied Defendant's motion for a judgment of acquittal on the conspiracy charge.

B.    **Whether the Government's Closing Argument Regarding Defendant's Prior New Jersey Conviction Entitles Him to a New Trial**

We will only reverse a conviction based on statements made during the Government's opening or closing if the statements were improper and prejudiced the defendant's substantive rights.  *United States v. Frank*, 599 F.3d 1221, 1237 (11th Cir. 2010).  If the defendant failed to object to the allegedly improper statements below, as is the case here, we review only for plain error.  *Id.* at 1238. There can be no plain error unless the issue is specifically and directly resolved by the explicit language of a statute or rule or on-point precedent from the Supreme

11

Court or this Court.  *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015).

Section 922(g) makes it unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm.  *See* 18 U.S.C. § 922(g)(1).  To show that Defendant violated § 922(g), the Government presented evidence that Defendant sustained a 1976 New Jersey conviction for welfare fraud conspiracy and obtaining money by falsely pretending to be poor.  The evidence included a New Jersey docket sheet indicating that the trial court initially imposed a prison sentence of not less than two years or more than three years, but later resentenced Defendant to 364 days' imprisonment.

In its closing argument, the Government stated that the record of the New Jersey conviction showed that Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.  Defendant now argues on appeal that the Government's statement was improper and that the district court should have *sua sponte* struck it.  He makes this argument even though he never objected at trial to the Government's remarks.  As to the substance of his argument, he contends that, even if he was the Elbert Walker convicted of welfare fraud conspiracy in New Jersey, the New Jersey conviction did not qualify as a § 922(g) predicate because (1) the conviction was for a misdemeanor and (2) he was resentenced to serve less than one year's imprisonment.

12

Contrary to Defendant's suggestion, § 922(g) does not require a prior felony conviction, but only a prior conviction for a "crime punishable by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1).  That Defendant's prior conviction was for a crime punishable by a term exceeding one year was demonstrated by evidence that he was sentenced to a two-to-three year prison term. The fact that Defendant was later resentenced to 364 days' imprisonment obviously does not speak to the length of time for which his crime was "punishable."  *Id.*  Further, although the statute excludes from "[t]he term 'crime punishable by imprisonment for a term exceeding one year' . . . any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less," 18 U.S.C. § 921(a)(20)(B), Defendant nowhere explains how his misdemeanor conviction would fall within that exception, given that his initial sentence was for two-to-three years' imprisonment. In short, Defendant fails to explain why his New Jersey conviction would not qualify as a § 922(g) predicate under the statute's plain language.  More importantly for purposes of his present claim on appeal, he offers no persuasive argument in support of his contention that, even though he never objected, the district court on those facts should have *sua sponte* struck this part of the Government's closing argument.  Accordingly, Defendant has shown no error, plain or otherwise.

13

## III.    <u>CONCLUSION</u>

Because sufficient evidence supported the jury's finding that Defendant conspired to commit arson, and Defendant has not shown plain error based on prosecutorial misconduct, we affirm Defendant's convictions.

**AFFIRMED.**